IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

Karen Lawlor, Maureen Leone, Warren          :
Fleming, Kathleen Niland, Yvonne Robinson:
and Jeannine Simard                          :
                                             :
                                             :
          Plaintiffs,                        :        Civil Action No.:
                                             :
       v.                                    :
                                             :        COMPLAINT AND JURY DEMAND
                                             :
DVA Renal Healthcare, Inc., Yale             :
University and Dr. Leroy Rex Mahnensmith :             February 12, 2015
                                             :
                                             :
          Defendants.                        :

<u>COMPLAINT</u>

<u>PRELIMINARY STATEMENT</u>

NOW COME the Plaintiffs Karen Lawlor, Maureen Leone, Warren Fleming, Kathleen

Niland, Yvonne Robinson, and Jeannine Simard, by and through their undersigned counsel,

Jennifer L. Zito, Esq., to file this Complaint alleging Sexual Harassment Sex Discrimination in

violation of Title VII of the Civil Rights Act of 1964 §701 *et seq.* as amended 42 U.S.C.§2000e,

*et seq.*, Retaliation in violation of 42 U.S.C. §2000e-3(a), Sex Discrimination Under an

Education Program in violation of 20 U.S.C. §1681(a) relating to the prohibition of sex

discrimination under any education program or activity receiving federal financial assistance

under Title IX of the Education Amendments of 1972, Retaliation in violation of 42 U.S.C.

§2000e-3, violations of the Connecticut Fair Employment Practices Act ("CFEPA") specifically

Connecticut General Statutes ("C.G.S.") §46a-60(a)(8) and §46a-60(a)(4), and Negligent Failure

to Supervise, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional

Distress, and Intentional Sexual Assault under Connecticut law.

PARTIES

1.  The Plaintiffs Karen Lawlor, Maureen Leone, Warren Fleming, Kathleen Niland, Yvonne Robinson, and Jeannine Simard, are individuals residing in the State of Connecticut and were at all times relevant hereto a team of professionals working at DVA Renal Healthcare, Inc.'s DaVita New Haven Dialysis Clinic located at 100 Church Street South, New Haven, CT.

2.  Defendant DVA Renal Healthcare, Inc. f/k/a Gambro Healthcare, Inc., operating as a subsidiary of DaVita HealthCare Partners, Inc., ("DaVita") is a Tennessee corporation engaged in the business of operating dialysis clinics in the United States with its principal place of business located at 2000 16th Street, Denver, Colorado.  At all times relevant hereto Defendant DaVita owned dialysis clinics statewide including two dialysis clinics in New Haven, CT which it operated in conjunction with Defendant Yale University.

3.  Defendant Yale University ("Yale") is a Connecticut corporation with its principal place of business in New Haven, CT engaged in the business of higher education.  Defendant Yale's School of Medicine, Department of Internal Medicine, Nephrology Section engages in the education of persons who desire to become physicians and, at all times relevant hereto, contracted with Defendant DaVita to provide physicians to the clinics including providing a faculty member to serve as the Medical Director for the New Haven dialysis clinics as well as attending nephrology physicians.  Yale's physicians refer their patients to the clinics and treat them therein.

4. Defendant Dr. Leroy Rex Mahnensmith, at all times relevant hereto, was employed by Yale as a Professor of Medicine (Nephrology) and also designated by Yale as the Medical Director of the New Haven Dialysis Clinic as well as the Acute Hemodialysis Clinic in New Haven, CT.   Dr. Mahnensmith was responsible for the supervision and direction of the overall

2

clinical and professional services rendered in the clinics including the oversight and management of all staff and physicians in the clinics.  Dr. Mahnensmith sat on the New Haven dialysis clinics' Governing Body.  Dr. Mahnensmith also served as a primary nephrologist to many of the clinics' patients.

JURISDICTION AND VENUE

5.  This Court has original and exclusive subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 relating to federal question matters, and pursuant to 42 U.S.C. §2000e, *et seq.,* relating to sexual harassment/sex discrimination and retaliation in the workplace under Title VII of the Civil Rights Act of 1964 and  pursuant to 20 U.S.C. §1681(a)  relating to the prohibition of sex discrimination under any education program or activity receiving Federal financial assistance under Title IX of the Education Amendments of 1972.

6.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1332 based upon diversity of citizenship of the parties as the amount in controversy exceeds $75,000.00 and is between citizens of different states.

7.  Jurisdiction over the claims brought under Connecticut law is also conferred under the doctrine of pendent jurisdiction and 28 U.S.C §1367 as the claims arise out of the same transaction and occurrences as Plaintiffs' federal claims.

8.  Jurisdiction to grant injunctive and declaratory equitable relief as well as damages is invoked pursuant to 28 U.S.C. §§ 2201, 2202 and C.G.S. §46a-104 and the implied right of action under Title IX.

9.  Venue is properly laid in this Court pursuant to 28 U.S.C. §1391(b) and (c), in that the corporate Defendants are deemed by statute to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced.  DaVita is subject to

personal jurisdiction in the District of Connecticut doing business generally in the State of Connecticut.  Yale is subject to personal jurisdiction in this district as a Connecticut corporation doing business generally in the State of Connecticut.

10.  Plaintiffs filed timely claims with the Connecticut Commission on Human Rights and Opportunities ("CHRO") against Defendants DaVita and Yale which Commission issued Releases of Jurisdiction to Plaintiffs on June 26, 2014 copies of which are attached hereto as Exhibit 1.

11.  Plaintiffs filed timely claims with the Equal Employment Opportunity Commission ("EEOC") against Defendants DaVita and Yale which Commission issued Notice of Right to Sue Letters to Plaintiffs on July 23, 2014 copies of which letters are attached as Exhibit 2.

12.  Pursuant to a certain Tolling Agreement dated September 21, 2014 as amended December 19, 2014 and January 26, 2015 attached hereto as Exhibit 3, the Plaintiffs and corporate Defendants agreed to a tolling of the 90 day limitations periods within which the Plaintiffs were required to file suit up to and including February 13, 2015.

STATEMENT OF FACTS

13.  At all times relevant hereto Defendant DaVita in conjunction with Defendant Yale provided dialysis and instruction for home dialysis to renal patients in two New Haven dialysis clinics: the New Haven Dialysis Clinic and the Acute Hemodialysis Clinic.  DaVita staffs its dialysis clinics with administrators, administrative assistants, technicians, nurses, social workers, and dieticians, and provides all of the dialysis equipment.  Defendant DaVita contracted with Defendant Yale for the provision of a Medical Director and attending physicians to provide services in the operation of the clinics.

4

14. Defendant Yale, through its School of Medicine, Nephrology Section designated a Medical Director as its agent to oversee the New Haven dialysis clinics including its staff, physicians and all treatment rendered therein. Yale's School of Medicine also provided attending nephrologists to treat renal patients in the clinics and to educate fellows and interns in the clinics.

15. The New Haven Dialysis Clinic ("NHDC") is comprised of two separate units where renal patients receive dialysis treatment and/or training to undergo dialysis treatment at home: the Hemodialysis Unit and the DaVita at Home Unit. NHDC is located in the Yale School of Nursing building owned by Yale at 100 Church Street South, New Haven, CT and leased by DaVita.

16. NHDC's Hemodialysis Unit ("Hemo Unit") treats and follows renal patients for hemodialysis filtering their blood through a machine. Renal patients in this unit undergo hemodialysis onsite.

17. NHDC's DaVita at Home Unit ("DaVita at Home") is located in a separate section of the building and is comprised of two programs: the Peritoneal Dialysis Program ("PD Program") and Home Hemodialysis Program ("HHD Program"). The PD/HHD Programs train patients on site and in their homes to undergo peritoneal dialysis and hemodialysis respectively in their homes. DaVita at Home also treats patients in the clinic or at home for routine blood work, consultation with a social worker and dietician, and visits with nephrologists.

18. The Acute Clinic ("Acutes") is separate from NHDC. It occupies part of the 8th floor of Yale New Haven Hospital ("YNHH") and provides hemodialysis treatment to renal patients admitted to the hospital. Like NHDC though, DaVita staffs Acutes and contracts with Yale for the provision of its nephrologists and Medical Director who was, at all times relevant hereto, Dr. Mahnensmith.

19.  Keith Parmalee was the Facility Administrator of NHDC from May, 2013 to March 27, 2014.

20.  Elizabeth ("Libby") Chiapperino was the Group Facility Administrator of NHDC from July, 2010 to January 3, 2014.

21.  Plaintiff Jeannine Simard, a female, was at all times relevant hereto, a Clinical Service Specialist covering NHDC.

22.  Laurie Gadzik, a female, was the Program Manager of DaVita at Home from 2011 to August, 2013 charged to manage the PD/HHD programs.

23.  Plaintiff Warren Fleming worked continuously in NHDC from 1998 to June, 2014 as a dialysis nurse serving most recently as the Clinical Nurse Coordinator of the PD Program.

24.  Plaintiff Karen Lawlor, a female, worked as a peritoneal dialysis nurse in DaVita at Home's PD Program from January, 2011 until her resignation in June, 2014.

25.  Maureen DeMatteo, a female, has worked as a peritoneal dialysis nurse in DaVita at Home's PD Program since 2011.

26.  Plaintiff Yvonne Robinson was, at all times relevant hereto, a female dialysis nurse working in the New Haven dialysis clinics since 1999.  From 2009 to 2012 Plaintiff Robinson worked as a nurse in Acutes.  Since 2012 Plaintiff Robinson has worked in the HHD Program.  A

27.  Plaintiff Maureen Leone is a female Licensed Clinical Social Worker who works and has worked at all times relevant hereto in NHDC since 2000.

28.  Plaintiff Kathleen ("Kathy") Niland, a female, worked at all times relevant hereto as a fulltime Registered Dietician/Renal Dietician in NHDC in each of its two units since January, 2010.

29.   Brian Karstetter is an agent and employee of DaVita acting at all times relevant hereto as its Regional Operations Director for Region 4 ("ROD") managing NHDC.

30.   Elise Duke is an agent and employee of DaVita acting at all times relevant hereto as its Northeast Division Vice President ("VP") responsible for the management of NHDC.

31.   Paul Santanello is an agent and employee of DaVita acting at all times relevant hereto as its People Services Manager ("PSM") for DaVita's Avanti Group Nor'easters Division in White Plains, N.Y responsible for handling human resource issues for the employees of NHDC.

32.   At all times relevant hereto, Dr. Mahnensmith, in his capacity as Medical Director of NHDC, would intimidate and passive-aggressively harass Plaintiffs if they challenged him, his conduct or his practices in the workplace.

33.   At all times relevant hereto, Dr. Mahnensmith, acting in his capacity as Medical Director of NHDC, engaged in continuing course of unprofessional and sexually inappropriate behaviors while interacting with Plaintiffs Lawlor, Leone, Fleming, Niland, Robinson and Simard, Laurie Gadzik and Maureen DeMatteo (hereinafter "Teammates").

34.   At times relevant hereto, Dr. Mahnensmith, in his capacity as Medical Director of NHDC and while treating renal patients in DaVita at Home, engaged in an ongoing and continuous course of unprofessional and sexually inappropriate behaviors while interacting with female patients in the presence of the Teammates.

35.   At all times relevant hereto Dr. Mahnensmith was in a supervisory position of authority over the Teammates who were intimidated by his position and protected status within the management of DaVita and Yale.

36.   On diverse dates Yale's attending physicians working in NHDC made known to Plaintiffs Lawlor, Leone, Fleming, Niland and Robinson that they and Yale were aware of Dr. Mahnensmith's sexual misconduct toward women in that at least one formal and other informal sexual harassment complaints had been made against Dr. Mahnensmith.

37.   At all times relevant hereto, Dr. Mahnensmith, in his capacity as Medical Director of NHDC, routinely put the Teammates, FA Parmalee and patients at risk by failing to follow Yale's medical bylaws and DaVita's policies and procedures relative to infection control, hours of operation, prescription drugs, and acceptable patient behavior.

38.   Dr. Mahnensmith, in his capacity as Medical Director of NHDC, regularly prescribed narcotics to NHDC's drug seeking patients, and enticed renal patients to dialyze in NHDC by prescribing them narcotic pain relievers such as Fentanyl and MS Contin causing patients to refuse treatment and create behavioral problems until they received the narcotics in violation of DaVita policy.

39.   Dr. Mahnensmith, as an employee of Yale designated to serve as Medical Director of NHDC, was unsupervised and unchecked in NHDC by Defendant Yale although Yale was aware of his sexual harassment and misconduct towards women.

40.   In failing to supervise or check Dr. Mahnensmith in his role as its designated Medical Director of NHDC, Yale enabled Dr. Mahnensmith's misconduct, sexual and otherwise.

41.   At all times relevant hereto, DaVita made known to the Teammates the primary importance of its Yale contracts and intent to keep Dr. Mahnensmith happy to protect its contracts with Yale.  The Yale contracts afforded DaVita both financial gain and status in the dialysis community due to the Yale brand and association.  As a result, DaVita allowed Dr.

Mahnensmith to function as Medical Director of its clinics without adequate supervision or control and, in fact, diminished oversight of Dr. Mahnensmith at his insistence.

42.   Motivated by its desire to preserve its prized Yale contracts, DaVita deliberately and/or recklessly failed to enforce its own policies and procedures in the face of repeated complaints lodged against Dr. Mahnensmith in 2013 by FA Parmalee and GFA Chiapperino about policy violations jeopardizing staff and patients, and in preceding years by other FAs.

43.   Motivated by its desire to preserve its prized Yale contracts, DaVita afforded Dr. Mahnensmith free reign as Medical Director of NHDC,  thereby enabling his misconduct, sexual and otherwise, and solidifying in NHDC a culture of company tolerance of Dr. Mahnensmith's misconduct.

44.   Empowered by a lack of oversight and ability to thwart company policies, Dr. Mahnensmith was permitted to engage in misconduct in his role as Medical Director of NHDC.


**COUNT I  - TITLE VII – SEX DISCRIMINATION HOSTILE WORK ENVIRONMENT/PREGNANCY**

**(Karen Lawlor v. DaVita)**

45.   Paragraphs 1 through 28 are incorporated herein by reference as if more fully set forth herein.

46.   Paragraphs 32 through 35, 41, 43 and 44 are incorporated herein by reference as if more fully set forth herein.

47.   Plaintiff Lawlor was employed by Defendant DaVita from January, 2011 to June, 2014 as a peritoneal dialysis nurse in NHDC under the direct supervision of Yale's employee, Dr. Mahnensmith, who had the capacity to make employment decisions about her.

48.  On or about November 26, 2013, Plaintiff Jeannine Simard was working in NHDC and attending a meeting in DaVita at Home's conference room.  She was seated at the conference room table with Plaintiffs Karen Lawlor, Warren Fleming, and Maureen Leone, and Laurie Gadzik when Dr. Mahnensmith entered the room and stood directly behind Plaintiff Simard thrusting his pelvis in a sexual manner into the back of her chair rocking it to and fro.  In an effort to stop him, Plaintiff Fleming offered Dr. Mahnensmith a seat and told him to sit down.  Dr. Mahnensmith replied with a smirk, "I'm not finished yet", and continued to sexually gratify himself until announcing to the group that he was finished.

49.  On or about early to mid November, 2013, Plaintiff Karen Lawlor was sitting in the conference room in DaVita at Home eating lunch and attending a patient care conference when Dr. Mahnensmith approached her from behind and began thrusting his pelvis into the back of her chair in a sexual manner.  Plaintiffs Leone and Fleming were also in the room and witnessed the sexual misconduct.  Dr. Mahnensmith's sexual acts were neither provoked nor welcomed.

50.  On two separate occasions on or about the summer of 2013, Plaintiff Lawlor was in a dialysis room with a patient in DaVita at Home with Dr. Mahnensmith.  In the presence of the patients Dr. Mahnensmith told Plaintiff Lawlor she had done a good job and slapped her on the rear end three times causing her embarrassment and humiliation.

51.  Shortly after giving birth to her child in February, 2013, Dr. Mahnensmith texted Plaintiff Lawlor inquiring whether she was breastfeeding and texting that her son was "in for a real treat" offending her and causing her embarrassment.

52.  After Plaintiff Lawlor gave birth to her child in February, 2013, Dr. Mahnensmith routinely blamed her perceived failures, misunderstandings or mistakes at work on the fact that

10

she was lactating in the presence of Plaintiffs Leone, Fleming, DeMatteo, Niland, and Robinson thereby humiliating, ridiculing and embarrassing her.

53. On or around May to June, 2013, Dr. Mahnensmith touched Plaintiff Lawlor's breast in an offensive and unwelcomed manner in the presence of Plaintiff Leone during a Patient Care Conference in the conference room at DaVita at Home.

54. On or about early 2013, Dr. Mahnensmith, in the presence of Plaintiffs Lawlor and Leone, and teammate DeMatteo, stated in a sexual tone that he "liked to rub lotion all over my body" offending and embarrassing Plaintiff Lawlor, and causing her to feel uncomfortable.

55. Around that same time, in the presence of Plaintiff Lawlor and a female patient, Dr. Mahnensmith inquired about a rash the patient previously had on her chest. When told it was all better, Dr. Mahnensmith expressed his disappointment offending Plaintiff Lawlor and causing her to feel embarrassed for herself and the patient.

56. In discussing a patient's herpes with her, Dr. Mahnensmith told Plaintiff Lawlor to "be careful whose sausage you put in your can" which sexual comment she found offensive and embarrassing.

57. Plaintiff Lawlor was the object of Dr. Mahnensmith's obsession: he would continually assign his patients to her, gawk at her, lust after her, touch her on her stomach, waist and thighs in an inappropriate and sexual way causing her to be overworked, offended, embarrassed and uncomfortable.

58. Routinely throughout her employment in NHDC Dr. Mahnensmith would rub his penis with his hands down the front of his pants and massage his nipples while engaging in clinical discussions with Plaintiff Lawlor discussing patient care.

59.  Plaintiff Lawlor was physically threatened by Dr. Mahnensmith's inappropriate touching and frottage, and humiliated, ridiculed and embarrassed by his sexual comments creating a continual tension and need for hyper-vigilance in the workplace to either avoid vulnerable situations or to protect herself when in Dr. Mahnensmith's presence.

60.  Dr. Mahnensmith's unwelcomed sexual assaults and harassment of Plaintiff Lawlor and other women in DaVita at Home were severe and pervasive altering the conditions of Plaintiff Lawlor's work environment and creating an intimidating, hostile and offensive work environment.

61.  In retaliation for rebuffing Dr. Mahnensmith's sexual advances or commenting on his inappropriate sexual behaviors, Dr. Mahnensmith would chastise Plaintiff Lawlor, critique her work more severely, embarrass her in front of their colleagues, blame her perceived inadequacies on lactation, argue with her in front of colleagues, and/or make her feel guilty she was not attending adequately to her patients' needs.

62.  DaVita, through its agent's Dr. Mahnensmith's sexual harassment, intimidation, humiliation and ridicule of Plaintiff Lawlor and other women in NHDC acting as Plaintiff Lawlor's supervisor in his role as Medical Director, discriminated against Plaintiff Lawlor on the basis of sex, including her pregnancy, by creating a hostile work environment in her employment in violation of Title VII codified at 42 U.S.C. §2000e-2(a)(1).

63.  As a result of DaVita's sex discrimination, including pregnancy, Plaintiff Lawlor felt compelled to leave her employment with DaVita in the summer of 2014 and has suffered, and will continue to suffer, emotional distress, personal injury, mental anguish, lost wages, lost benefits, lost seniority, and money damages.

64.   Plaintiff Lawlor claims back pay, front pay, lost benefits, compensatory damages, punitive damages, attorney's fees, costs, interest, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT II - TITLE VII – SEX DISCRIMINATION HOSTILE WORK ENVIRONMENT

### (Maureen Leone v. DaVita)

65.   Paragraphs 1 through 28 are incorporated herein by reference as if more fully set forth herein.

66.   Paragraphs 32 through 35, 41, 43 and 44 are incorporated herein by reference as if more fully set forth herein.

67.   Plaintiff Leone was employed by Defendant DaVita and its predecessor from May, 2000 to the present in as a Licensed Clinical Social Worker in NHDC under the direct supervision of Yale's employee, Dr. Mahnensmith who had the capacity to make employment decisions about her.

68.   In 2002, Plaintiff Leone, while seated on a stool in the Hemo Unit, was assaulted from behind when Dr. Mahnensmith pressed his erect penis against her back.  Plaintiff Leone immediately reported the incident to her Supervisor; Defendant DaVita took no action to correct or stop the harassment.  Plaintiff Leone was warned by her Supervisor that this was the "culture of the clinic" and to avoid Dr. Mahnensmith if possible.

69.   On or about November 26, 2013, Plaintiff Jeannine Simard was working in NHDC and attending a meeting in DaVita at Home's conference room.  She was seated at the conference room table with Plaintiffs Karen Lawlor, Warren Fleming, and Maureen Leone, and Laurie Gadzik when Dr. Mahnensmith entered the room and stood directly behind Plaintiff Simard thrusting his pelvis in a sexual manner into the back of her chair rocking it to and fro.  In

an effort to stop him, Plaintiff Fleming offered Dr. Mahnensmith a seat and told him to sit down. Dr. Mahnensmith replied with a smirk, "I'm not finished yet", and continued to sexually gratify himself until announcing to the group that he was finished.

70.   On or about early to mid November, 2013, Plaintiff Leone was sitting in the conference room in DaVita at Home attending a patient care conference when she witnessed Dr. Mahnensmith approach Plaintiff Karen Lawlor from behind and thrust his pelvis into the back of her chair in a sexual manner for his own personal sexual gratification.  Dr. Mahnensmith's sexual acts were neither provoked nor welcomed.

71.   After Plaintiff Lawlor gave birth to her child in February, 2013, Plaintiff Leone witnessed Dr. Mahnensmith routinely blamed her perceived failures, misunderstandings or mistakes on the fact that Plaintiff Lawlor was lactating offending her and causing her embarrassment for Plaintiff Lawlor.

72.   On or around May to June, 2013, Plaintiff Leone witnessed Dr. Mahnensmith touch Plaintiff Lawlor's breast in an offensive and unwelcomed manner in the presence of Plaintiff Leone during a Patient Care Conference in the conference room at DaVita at Home causing her to feel embarrassed, offended and extremely uncomfortable.

73.   On or about early 2013, Dr. Mahnensmith, in the presence of Plaintiffs Lawlor, DeMatteo and Leone, and a female patient stated in a sexual tone that he "liked to rub lotion all over my body" offending and embarrassing Plaintiff Leone, and causing her to feel very uncomfortable.

74.   Regularly throughout Plaintiff Leone's employment with DaVita, Dr. Mahnensmith hugged her tight around the hip in a sexual manner, grabbed her necklace to exert

14

control over her and intimidate her while speaking to her, squeezed her shoulders and rubbed the sides of her arms while she was working at the computer.

75.  Regularly throughout Plaintiff Leone's employment with DaVita Dr. Mahnensmith deliberately massaged his nipples and rubbed his penis with his hands down the front of his pants while speaking to her about patients all of which offended her and made her uncomfortable and embarrassed.

76.  Plaintiff Leone was physically threatened and intimidated by Dr. Mahnensmith's sexual assault, inappropriate touching and frottage, and humiliated, ridiculed and embarrassed by his sexual comments creating a continual tension and need for hyper-vigilance in the workplace to either avoid vulnerable situations or to protect herself and fellow Teammates when in Dr. Mahnensmith's presence.

77.  Dr. Mahnensmith's unwelcomed sexual assaults and harassment of Plaintiff Leone and other women in DaVita at Home were severe and pervasive altering the conditions of Plaintiff Leone's work environment and creating an intimidating, hostile and offensive work environment.

78.  In retaliation for rebuffing Dr. Mahnensmith's sexual advances or commenting on his inappropriate sexual behaviors, Dr. Mahnensmith would chastise Plaintiff Leone and other female Teammates, critique their work more severely, and embarrass them in front of their colleagues.  On one occasion Dr. Mahnensmith slapped Plaintiff Leone with a tie repeatedly during a meeting for avoiding his physical contact, and often made Plaintiff Leone feel guilty she not attending adequately to her patients' needs.

79.  DaVita, through its agent's Dr. Mahnensmith's sexual harassment, intimidation, humiliation and ridicule of Plaintiff Leone and other women in NHDC acting as Plaintiff

15

Lawlor's supervisor in his role as Medical Director, discriminated against Plaintiff Leone on the basis of sex by creating a hostile work environment in her employment in violation of Title VII codified at 42 U.S.C. §2000e-2(a)(1).

80. As a result of DaVita's sex discrimination, Plaintiff Leone felt has suffered, and will continue to suffer, emotional distress, personal injury, mental anguish, and money damages.

81. Plaintiff Leone claims compensatory damages, punitive damages, attorney's fees, costs, interest, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT III - TITLE VII  SEX DISCRIMINATION HOSTILE WORK ENVIRONMENT
## (Warren Fleming v. DaVita)

82. Paragraphs 1 through 28 are incorporated herein by reference as if more fully set forth herein.

83. Paragraphs 32 through 35, 41, 43 and 44 are incorporated herein by reference as if more fully set forth herein.

84. Plaintiff Fleming was employed by Defendant DaVita and its predecessor from 1998 to June, 2014 as staff nurse and more recently Clinical Nurse Coordinator in NHDC under the direct supervision of Yale's employee, Dr. Mahnensmith who had the capacity to make employment decisions about him.

85. After Plaintiff Lawlor gave birth to her child in February, 2013, Dr. Mahnensmith routinely blamed nurse Lawlor's perceived failures, misunderstandings or mistakes on the fact that she was lactating in the presence of Teammates Leone, Fleming, DeMatteo, Niland, and Robinson, humiliating Plaintiff Lawlor and offending Plaintiff Fleming.

86. Plaintiff Fleming routinely witnessed Dr. Mahnensmith massaging his nipples and rubbing his penis while discussing patient care with female staff thereby embarrassing and offending him.

16

87. Plaintiff Fleming witnessed Dr. Mahnensmith on various dates throughout his employment rub female staffs' shoulders and upper chest and touch female patients' legs mid-thigh for no clinical purpose.

88. Plaintiff Fleming routinely over the years witnessed Dr. Mahnensmith inappropriately hugging female Teammates pressing himself tightly against them, pat and slap female patients and Teammates on the buttocks, and openly discuss the body parts of the female staff and Teammates.

89. In November 2013, Plaintiff Fleming witnessed Dr. Mahnensmith in the conference room sexually gratify himself against the back of Plaintiff Lawlor's chair by thrusting his pelvis in a sexual manner against the back of her chair causing him embarrassment and offense.

90. Thereafter, on or about November 26, 2013, Plaintiff Jeannine Simard was working in NHDC and attending a meeting in DaVita at Home's conference room. She was seated at the conference room table with Plaintiffs Karen Lawlor, Warren Fleming, and Maureen Leone, and Laurie Gadzik when Dr. Mahnensmith entered the room and stood directly behind Plaintiff Simard thrusting his pelvis in a sexual manner into the back of her chair rocking it to and fro. In an effort to stop him, Plaintiff Fleming offered Dr. Mahnensmith a seat and told him to sit down. Dr. Mahnensmith replied with a smirk, "I'm not finished yet", and continued to sexually gratify himself until announcing to the group that he was finished causing Plaintiff Fleming tremendous embarrassment and offense.

91. In mid November, 2013, Plaintiffs Robinson and Fleming also witnessed Dr. Mahnensmith thrusting his pelvis into the back of a chair occupied by a female Administrative

Assistant in DaVita at Home in a sexual manner as she worked at a computer offending them and causing them to feel embarrassed and offended.

92.   Plaintiff Fleming felt responsible to protect female Teammates from Dr. Mahnensmith's inappropriate touching and frottage, and was routinely offended, humiliated, ridiculed and embarrassed by his sexual comments creating a continual tension and need for hyper-vigilance in the workplace to distract Dr. Mahnensmith and protect his fellow Teammates when in Dr. Mahnensmith's presence.   Plaintiff Fleming was intimidated by Dr. Mahnensmith's position and protected status within the management of DaVita and Yale.

93.   Dr. Mahnensmith's unwelcomed sexual assaults and harassment of women in DaVita at Home were severe and pervasive altering the conditions of Plaintiff Fleming's work environment and creating an intimidating, hostile and offensive work environment

94.   In retaliation for interfering with Dr. Mahnensmith's sexual advances toward women or commenting on his inappropriate sexual behaviors, Dr. Mahnensmith would chastise Plaintiff Fleming and other Teammates, critique his work more severely, embarrass him in front of his colleagues and make Plaintiff Fleming feel guilty that he not attending adequately to his patients' needs.

95.   DaVita, through its agent's Dr. Mahnensmith's sexual harassment, intimidation, humiliation and ridicule of Plaintiff Lawlor and other women in NHDC acting as Plaintiff Fleming's supervisor in his role as Medical Director, discriminated against Plaintiff Fleming on the basis of sex, as a witness, by creating a hostile work environment in her employment in violation of Title VII codified at 42 U.S.C. §2000e-2(a)(1).

96.   As a result of DaVita's discrimination, Plaintiff Fleming felt compelled to leave his job after 16 years of service in NHDC accepting a demotion in DaVita's Bridgeport clinic from

which he prematurely retired in November, 2014 due to his lack of seniority and stature in the workplace he had previously earned and enjoyed.

97.   As a result of DaVita's sex discrimination, Plaintiff Fleming has suffered, and will continue to suffer, emotional distress, personal injury, mental anguish, and money damages.

98.   As a result of the discrimination, Plaintiff Fleming claims back wages, future pay, lost benefits, compensatory damages,   punitive damages, attorney's fees, costs, interest, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT IV - TITLE VII  SEX DISCRIMINATION HOSTILE WORK ENVIRONMENT
## (Kathleen Niland v. DaVita)

99.   Paragraphs 1 through 28 are incorporated herein by reference as if more fully set forth herein.

100.   Paragraphs 32 through 35, 41, 43 and 44 are incorporated herein by reference as if more fully set forth herein.

101.   Plaintiff Niland was employed by Defendant DaVita and its predecessor from 1995 to the present as a Dietician working in NHDC since January, 2010 under the direct supervision of Yale's employee, Dr. Mahnensmith who had the capacity to make employment decisions about her.

102.   On or about July, 2013 Plaintiff Niland, while working at DaVita at Home, was sitting on a stool in a patient's room facing the patient and away from the door when suddenly from behind Dr. Mahnensmith sexually assaulted her by pressing his erect penis against her back while sternly holding and rubbing her shoulders.  Immediately thereafter, Plaintiff Niland reported the sexual assault to her Supervisor, Program Manager Laurie Gadzik.  No action was taken by DaVita to correct or stop Dr. Mahnensmith's sexual harassment and assault.

103.  After Plaintiff Lawlor gave birth to her child in February, 2013, Dr. Mahnensmith routinely blamed teammate Lawlor's perceived failures, misunderstandings or mistakes on the fact that she was lactating in the presence of Plaintiffs Leone, Fleming, DeMatteo, Niland, and Robinson, humiliating Plaintiff Lawlor, and offending Plaintiff Niland.

104.  On diverse dates throughout her employment at NHDC, Plaintiff Niland witnessed Dr. Mahnensmith deliberately rub his penis with his hands down the front of his pants and massage his nipples while discussing patient care with her causing her offense and embarrassment.

105.  On diverse dates throughout her employment Plaintiff Niland witnessed Dr. Mahnensmith sexually harassing Plaintiff Lawlor by gawking at Plaintiff Lawlor in a lustful manner, inappropriately touching Plaintiff Lawlor's stomach and waist, and by slapping female patients and staff on their rear ends.

106.  Plaintiff Niland was physically threatened by Dr. Mahnensmith's inappropriate touching and assault, and humiliated, ridiculed and embarrassed by his sexual comments and misconduct creating a continual tension and need for hyper-vigilance in the workplace to either avoid vulnerable situations or to protect herself when in Dr. Mahnensmith's presence.

107.  Dr. Mahnensmith's unwelcomed sexual assaults and harassment of Plaintiff Niland and other women in DaVita at Home were severe and pervasive altering the conditions of Plaintiff Niland's work environment and creating an intimidating, hostile and offensive work environment.

108.  In retaliation for interfering with Dr. Mahnensmith's sexual advances toward women or commenting on his inappropriate sexual behaviors, Dr. Mahnensmith would chastise Plaintiff Niland and other Teammates, critique her work more severely, embarrass her in front of

20

her colleagues and make Plaintiff Niland feel guilty that she not attending adequately to her patients' needs.

109.   Defendant DaVita discriminated against Plaintiff Niland on the basis of sex, by creating a hostile work environment in her employment in violation of Title VII codified at 42 U.S.C. §2000e-2(a)(1).

110.   As a result of DaVita's sex discrimination, Plaintiff Niland has suffered, and will continue to suffer, emotional distress, personal injury, mental anguish, and money damages.

111.   Wherefore, Plaintiff Niland claims compensatory damages, punitive damages, attorney's fees, costs, interest, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT V - TITLE VII - SEX DISCRIMINATION HOSTILE WORK ENVIRONMENT
**(Jeannine Simard v. DaVita)**

112.   Paragraphs 1 through 28 are incorporated herein by reference as if more fully set forth herein.

113.   Paragraphs 32 through 33, 35, 41, 43 and 44 are incorporated herein by reference as if more fully set forth herein.

114.   Plaintiff Simard has been continuously employed by Defendant DaVita to provide clinical support to her Teammates to educate them on DaVita policy and procedure since 2008 covering NHDC from 2008-2010 and again beginning in February, 2013 to the present at least two full days per week under the direct supervision of Yale's employee, Dr. Mahnensmith who had the capacity to make employment decisions about her.

115.   On diverse dates from February 13, 2013 through November, 2013 Dr. Mahnensmith would seek Plaintiff Simard out and position himself next to her in meetings.

21

During the meetings he would hold her hand and wrap his arm around hers. On at least one occasion ROD Karstetter was present and witnessed the inappropriate touching, but said and did nothing to stop or correct it.

116. On diverse dates between 2008 and 2010, and again from February, 2013 through November, 2013 Dr. Mahnensmith would routinely and deliberately massage his nipples and rub his penis with his hands down the front of his pants in her presence.

117. On November 21, 2013 Dr. Mahnensmith sat next to Plaintiff Simard at DaVita at Home's conference room table during a meeting. After removing his shoe, Dr. Mahnensmith placed his leg through the armrests on Plaintiff Simard's chair and ran his socked foot down the side of her armpit to her hip deliberately rubbing his foot over the side of her breast.

118. Thereafter, on or about November 26, 2013, Plaintiff Jeannine Simard was again working in NHDC and attending a meeting in DaVita at Home's conference room. She was seated at the conference table with Plaintiffs Karen Lawlor, Warren Fleming, and Maureen Leone, and Laurie Gadzik when Dr. Mahnensmith entered the room and stood directly behind Plaintiff Simard thrusting his pelvis in a sexual manner into the back of her chair rocking it to and fro. In an effort to stop him, Plaintiff Fleming offered Dr. Mahnensmith a seat and told him to sit down. Dr. Mahnensmith replied with a smirk, "I'm not finished yet", and continued to sexually gratify himself against Plaintiff Simard's occupied chair until announcing to the group that he was finished causing her humiliation, embarrassment and offense.

119. The next day, on November 27, 2013, Jeannine Simard reported the misconduct to one of her Supervisors who, upon information and belief, took no action.

120. On December 2, 2013, Plaintiff Simard told GFA Libby Chiapperino about Dr. Mahnensmith's misconduct.

121.  Dr. Mahnensmith's unwelcomed sexual assaults and harassment of Plaintiff Simard in DaVita at Home were severe and pervasive altering the conditions of Plaintiff Simard's work environment and creating an intimidating, hostile and offensive work environment.

122.  Plaintiff Simard was physically threatened by Dr. Mahnensmith's inappropriate touching and frottage, and humiliated, ridiculed and embarrassed by his sexual comments creating a continual tension and need for hyper-vigilance when working in NHDC to either avoid vulnerable situations or to protect herself when in Dr. Mahnensmith's presence.

123.  In retaliation for interfering with Dr. Mahnensmith's sexual advances toward women or commenting on his inappropriate sexual behaviors, Dr. Mahnensmith would chastise Plaintiff Simard and other Teammates, critique her work more severely, and embarrass her in front of her colleagues.

124.  DaVita discriminated against Plaintiff Simard on the basis of sex by creating a hostile work environment in her employment in violation of Title VII codified at 42 U.S.C. §2000e-2(a)(1).

125.  As a result of DaVita's sex discrimination, Plaintiff Simard has suffered, and will continue to suffer, emotional distress, personal injury, mental anguish, and money damages.

126.  Wherefore, Plaintiff Simard claims compensatory damages, punitive damages, attorney's fees, costs, interest, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT VI - TITLE VII SEXUAL HARASSMENT HOSTILE WORK ENVIRONMENT

**(Yvonne Robinson v. DaVita)**

127.   Paragraphs 1 through 28, 32 through 35, 41, 43 and 44 are incorporated herein by reference as if more fully set forth herein.

128.   Plaintiff Robinson has been continuously employed by DaVita and its predecessor since 1999 working in both Acutes and NHDC in DaVita at Home's Hemo Unit under the direct supervision of Yale's employee, Dr. Mahnensmith who had the capacity to make employment decisions about her.

129.   On or about 2012 while working in Acutes, Dr. Mahnensmith touched and felt Plaintiff Yvonne Robinson's breast in an offensive and unwelcomed manner.

130.   At or around the same time, while working in Acutes, Dr.  Mahnensmith slapped Plaintiff Robinson on the buttocks in an offensive and unwelcomed manner.  Plaintiff Robinson complained of the sexual harassment to the Charge Nurse in Acutes in 2012 and was told other nurses had also complained of similar misconduct by Dr. Mahnensmith but Yale had taken no action against him; as a result of the reporting no action was taken.

131.   After Plaintiff Lawlor gave birth to her child in February, 2013, Dr. Mahnensmith routinely blamed her perceived failures, misunderstandings or mistakes on the fact that she was lactating in the presence of Teammates Leone, Fleming, DeMatteo, Niland, and Robinson, humiliating and embarrassing Plaintiff Lawlor and offending Plaintiff Robinson.

132.   From 2011 to December, 2013, Plaintiff Robinson routinely witnessed Dr. Mahnensmith gawking at and lusting after Plaintiff Karen Lawlor causing her embarrassment and offense.

133. Dr. Mahnensmith routinely and deliberately massaged his nipples and groped his penis with his hands down the front of his pants while talking to Plaintiff Robinson and other female Teammates causing her embarrassment, humiliation and offense.

134. In mid November, 2013, Plaintiffs Robinson and Fleming witnessed Dr. Mahnensmith thrusting his pelvis into the back of a chair occupied by a female Administrative Assistant in a sexual manner as she worked at a computer offending her and causing Plaintiff Robinson to feel extremely uncomfortable and embarrassed.

135. Plaintiff Robinson was physically threatened by Dr. Mahnensmith's inappropriate touching and assault, and humiliated, ridiculed and embarrassed by his sexual comments and misconduct creating a continual tension and need for hyper-vigilance in the workplace to either avoid vulnerable situations or to protect herself when in Dr. Mahnensmith's presence.

136. Dr. Mahnensmith's unwelcomed sexual assaults and harassment of Plaintiff Robinson and other women in DaVita at Home were severe and pervasive altering the conditions of Plaintiff Robinson's work environment and creating an intimidating, hostile and offensive work environment.

137. In retaliation for interfering with Dr. Mahnensmith's sexual advances toward women or commenting on his inappropriate sexual behaviors, Dr. Mahnensmith would chastise Plaintiff Robinson and other Teammates, critique her work more severely, embarrass her in front of her colleagues and make Plaintiff Robinson feel guilty that she not attending adequately to her patients' needs.

138. DaVita discriminated against Plaintiff Robinson on the basis of sex by creating a hostile work environment in her employment in violation of Title VII codified at 42 U.S.C. §2000e-2(a)(1).

139. As a result of DaVita's sex discrimination, Plaintiff Robinson has suffered, and will continue to suffer, emotional distress, personal injury, mental anguish, and money damages.

140. Wherefore, Plaintiff Robinson claims compensatory damages, punitive damages, attorney's fees, costs, interest, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT VII - TITLE VII SEXUAL HARASSMENT HOSTILE WORK ENVIRONMENT
### (Karen Lawlor As to Yale)

141. Paragraphs 1 through 28, 32 through 35 and 48 through 61 are incorporated herein by reference as if more fully set forth herein.

142. At all times relevant hereto Defendant Yale, acting in concert with Defendant DaVita, operated DaVita at Home in a symbiotic relationship profitable to both entities. Yale, through its designated agent Dr. Mahnensmith, medically trained and supervised DaVita's employees and made hiring and firing decisions relative to them. Moreover, Yale, through its designated agent Dr. Mahnensmith, had the power to influence the renewal and/or termination of Yale's contracts with DaVita and/or divert his patients away from NHDC thereby significantly affecting access of Karen Lawlor to employment opportunities.

143. DaVita at Home was, at all times relevant hereto, located in Yale's School of Nursing owned by Defendant Yale where the sexual assaults and sexual harassment took place.

144. Defendant Yale, through its agent, servant and employee, Dr. Mahnensmith's sexual harassment, intimidation, humiliation and ridicule of women in NHDC while acting in his capacity as Yale's designated Medical Director of NHDC, discriminated against its de facto employee Karen Lawlor on the basis of sex in violation of 42 U.S.C. §2000e-2(a)(1).

145. As a result of Yale's sex discrimination, including pregnancy, Plaintiff Lawlor felt compelled to leave her employment with DaVita in the summer of 2014 and has suffered,

and will continue to suffer, humiliation, degradation, anxiety, fear, emotional distress, personal injury, PTSD, lost wages, lost benefits, lost seniority, and money damages.

146.   Plaintiff Lawlor claims back pay, front pay, lost benefits, compensatory damages, punitive damages, attorney's fees, costs, interest, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT VIII - TITLE VII – SEX DISCRIMINATION HOSTILE WORK ENVIRONMENT

**(Maureen Leone v. Yale)**

147.   Paragraphs 1 through 28, 32 through 35, and 68 through 78 are incorporated herein by reference as if more fully set forth herein.

148.   At all times relevant hereto Defendant Yale, in concert with Defendant DaVita, operated DaVita at Home in a symbiotic relationship profitable to both entities.  Yale, through its designated agent Dr. Mahnensmith, medically trained and supervised DaVita's employees and made hiring and firing decisions relative to them.  Moreover, Yale, through its designated agent Dr. Mahnensmith, had the power to influence the renewal or termination of Yale's contracts with DaVita and/or to divert his patients away from NHDC thereby significantly affecting access of Maureen Leone to employment opportunities.

149. DaVita at Home was, at all times relevant hereto, located in Yale's School of Nursing owned by Defendant Yale where the sexual assaults and sexual harassment took place.

150.   Defendant Yale,  through its agent, servant and employee, Dr. Mahnensmith's sexual harassment, intimidation, humiliation and ridicule of women in NHDC while acting in his capacity as Yale's designated Medical Director of NHDC, discriminated against its de facto employee Maureen Leone on the basis of sex in violation of 42 U.S.C. §2000e-2(a)(1).

151.   As a result of Yale's sex discrimination, Plaintiff Leone has suffered, and will continue to suffer, humiliation, degradation, anxiety, fear, emotional distress, personal injury, and money damages.

152.   Plaintiff Leone claims compensatory damages,  punitive damages, attorney's fees, costs, interest, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT IX - TITLE VII  SEX DISCRIMINATION HOSTILE WORK ENVIRONMENT
## (Warren Fleming v. Yale)

153.   Paragraphs 1 through 28, 32 through 35 and 85 through 94 are incorporated herein by reference as if more fully set forth herein.

154.   At all times relevant hereto Defendant Yale, in concert with Defendant DaVita, operated DaVita at Home in a symbiotic relationship profitable to both entities.  Yale, through its designated agent Dr. Mahnensmith, medically trained and supervised DaVita's employees and made hiring and firing decisions relative to them.  Moreover, Yale, through its designated agent Dr. Mahnensmith, had the power to influence the renewal or termination of Yale's contracts with DaVita and/or to divert his patients away from NHDC thereby significantly affecting access of Warren Fleming to employment opportunities.

155.   DaVita at Home was, at all times relevant hereto, located in Yale's School of Nursing owned by Defendant Yale where the sexual assaults and sexual harassment took place.

156.   Defendant Yale,  through its agent, servant and employee, Dr. Mahnensmith's sexual harassment, intimidation, humiliation and ridicule of women in NHDC while acting in his capacity as Yale's designated Medical Director of NHDC, discriminated against its de facto employee Warren Fleming on the basis of sex in violation of 42 U.S.C. §2000e-2(a)(1).

157.   As a result of Yale's sex discrimination, Plaintiff Fleming has suffered, and will continue to suffer, emotional distress, personal injury, mental anguish, and money damages.

28

158.  As a result of the discrimination, Plaintiff Fleming claims back wages, future pay, lost benefits, compensatory damages,   punitive damages, attorney's fees, costs, interest, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT X - TITLE VII  SEX DISCRIMINATION HOSTILE WORK ENVIRONMENT
**(Kathleen Niland v. Yale)**

159.  Paragraphs 1 through 28, 32 through 35, and 102 through 108 are incorporated herein by reference as if more fully set forth herein.

160.   At all times relevant hereto Defendant Yale, in concert with Defendant DaVita, operated DaVita at Home in a symbiotic relationship profitable to both entities.  Yale, through its designated agent Dr. Mahnensmith, medically trained and supervised DaVita's employees and made hiring and firing decisions relative to them.  Moreover, Yale, through its designated agent Dr. Mahnensmith, had the power to influence the renewal or termination of Yale's contracts with DaVita and/or to divert his patients away from NHDC thereby significantly affecting access of Kathleen Niland to employment opportunities.

161.  DaVita at Home, at all times relevant hereto, was located in Yale's School of Nursing owned by Defendant Yale where the sexual assaults and sexual harassment took place.

162.  Defendant Yale,  through its agent, servant and employee, Dr. Mahnensmith's sexual harassment, intimidation, humiliation and ridicule of women in NHDC while acting in his capacity as Yale's designated Medical Director of NHDC, discriminated against its de facto employee Kathleen Niland on the basis of sex in violation of 42 U.S.C. §2000e-2(a)(1).

163.  As a result of Yale's sex discrimination, Plaintiff Niland has suffered, and will continue to suffer, emotional distress, personal injury, mental anguish, and money damages.

164.   Wherefore, Plaintiff Niland claims compensatory damages, punitive damages, attorney's fees, costs, interest, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT XI - TITLE VII - SEX DISCRIMINATION HOSTILE WORK ENVIRONMENT
## (Jeannine Simard v. Yale)

165.   Paragraphs 1 through 28, 32, 33, 35 and 115 through 123 are incorporated herein by reference as if more fully set forth herein.

166.   At all times relevant hereto Defendant Yale, in concert with Defendant DaVita, operated DaVita at Home in a symbiotic relationship profitable to both entities.  Yale, through its designated agent Dr. Mahnensmith, medically trained and supervised DaVita's employees and made hiring and firing decisions relative to them.  Moreover, Yale, through its designated agent Dr. Mahnensmith, had the power to influence the renewal or termination of Yale's contracts with DaVita and/or to divert his patients away from NHDC thereby significantly affecting access of Jeannine Simard to employment opportunities.

167.   DaVita at Home, at all times relevant hereto, was located in Yale's School of Nursing owned by Defendant Yale where the sexual assaults and sexual harassment took place.

168.   Defendant Yale,  through its agent, servant and employee, Dr. Mahnensmith's sexual harassment, intimidation, humiliation and ridicule of women in NHDC while acting in his capacity as Yale's designated Medical Director of NHDC, discriminated against its de facto employee Jeannine Simard on the basis of sex in violation of 42 U.S.C. §2000e-2(a)(1).

169.   As a result of Yale's sex discrimination, Plaintiff Simard has suffered, and will continue to suffer, emotional distress, personal injury, mental anguish, and money damages.

170.   Wherefore, Plaintiff Simard claims compensatory damages, punitive damages, attorney's fees, costs, interest, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT XII -TITLE VII SEXUAL HARASSMENT HOSTILE WORK ENVIRONMENT
## (Yvonne Robinson v. Yale)

171.   Paragraphs 1 through 28, 32 through 35, and 129 through 137 are incorporated herein by reference as if more fully set forth herein.

172.   At all times relevant hereto Defendant Yale, in concert with Defendant DaVita, operated DaVita at Home in a symbiotic relationship profitable to both entities.  Yale, through its designated agent Dr. Mahnensmith, medically trained and supervised DaVita's employees and made hiring and firing decisions relative to them.  Moreover, Yale, through its designated agent Dr. Mahnensmith, had the power to influence the renewal or termination of Yale's contracts with DaVita and/or to divert his patients away from NHDC thereby significantly affecting access of Yvonne Robinson to employment opportunities.

173.   DaVita at Home, at all times relevant hereto, was located in Yale's School of Nursing owned by Defendant Yale where the much of the sexual harassment against Plaintiff Robinson took place.  Other acts of sexual harassment and discrimination by Dr. Mahnensmith against Plaintiff Robinson took place in Acutes located in Yale New Haven Hospital.

174.   Defendant Yale,  through its agent, servant and employee, Dr. Mahnensmith's sexual harassment, intimidation, humiliation and ridicule of women in NHDC while acting in his capacity as Yale's designated Medical Director of NHDC, discriminated against its de facto employee Yvonne Robinson on the basis of sex in violation of 42 U.S.C. §2000e-2(a)(1).

175.   As a result of Yale's sex discrimination, Plaintiff Robinson has suffered, and will continue to suffer, emotional distress, personal injury, mental anguish, and money damages.

176.  Wherefore, Plaintiff Robinson claims compensatory damages, punitive damages, attorney's fees, costs, interest, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT XIII – CFEPA SEXUAL HARASSMENT/SEX DISCRIMINATION
### (Karen Lawlor As to Defendant DaVita)

177.  Paragraphs 45 through 61 are incorporated herein by reference as if more fully set forth herein.

178.  DaVita, through its agent, Dr. Mahnensmith's, sexual harassment, intimidation, humiliation and ridicule of women in NHDC while acting in his capacity as Plaintiff Lawlor's supervisor in his role as its Medical Director, discriminated against her on the basis of sex in violation of Connecticut's Fair Employment Practices Act codified at C.G.S. §46a-60(a)(8)(C).

179.  As a result of DaVita's sex discrimination, Plaintiff Lawlor suffered lost wages, humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions, and other damages.

180.  Plaintiff Lawlor claims lost benefits, back pay, front pay, compensatory damages, punitive damages, and attorney's fees and costs pursuant to C.G.S. §46a-104, interest, costs, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT XIV – CFEPA SEXUAL HARASSMENT/SEX DISCRIMINATION

**(Maureen Leone As to Defendant DaVita)**

181.  Paragraphs 65 through 78 are incorporated herein by reference as if more fully set forth herein.

182.  DaVita, through its agent, Dr. Mahnensmith's, sexual harassment, intimidation, humiliation and ridicule of women in NHDC while acting in his capacity as Plaintiff Leone's supervisor in his role as its Medical Director, discriminated against her on the basis of sex in violation of Connecticut's Fair Employment Practices Act codified at C.G.S. §46a-60(a)(8)(C).

183.  As a result of DaVita's sex discrimination, Plaintiff Leone suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, physical conditions and other damages.

184.  Plaintiff Leone claims compensatory damages, punitive damages pursuant to C.G.S. §46a-104, attorney's fees and costs pursuant to C.G.S. §46a-104, interest, costs, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT XV – CFEPA SEXUAL HARASSMENT/SEX DISCRIMINATION

**(Warren Fleming As to Defendant DaVita)**

185.  Paragraphs 82 through 94 are incorporated herein by reference as if more fully set forth herein.

186.  DaVita, through its agent, Dr. Mahnensmith's, sexual harassment, intimidation, humiliation and ridicule of women in NHDC while acting in his capacity as Plaintiff Fleming's supervisor in his role as its Medical Director, discriminated against him on the basis of sex in violation of Connecticut's Fair Employment Practices Act codified at C.G.S. §46a-60(a)(8)(C).

187. As a result of DaVita's sex discrimination, Plaintiff Fleming suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

188. Plaintiff Fleming claims compensatory damages, punitive damages pursuant to C.G.S. §46a-104, Attorney's Fees and costs pursuant to C.G.S. §46a-104, interest, costs, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT XVI – CFEPA SEXUAL HARASSMENT/SEX DISCRIMINATION
**(Kathleen Niland As to Defendant DaVita)**

189. Paragraphs 99 through 108 are incorporated herein by reference as if more fully set forth herein.

190. DaVita, through its agent, Dr. Mahnensmith's, sexual harassment, intimidation, humiliation and ridicule of women in NHDC while acting in his capacity as Plaintiff Niland's supervisor in his role as its Medical Director, discriminated against her on the basis of sex in violation of Connecticut's Fair Employment Practices Act codified at C.G.S. §46a-60(a)(8)(C).

191. As a result of DaVita's sex discrimination, Plaintiff Niland suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

192. Plaintiff Niland claims compensatory damages, punitive damages pursuant to C.G.S. §46a-104, Attorney's Fees and costs pursuant to C.G.S. §46a-104, interest, costs, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT XVII – CFEPA SEXUAL HARASSMENT/SEX DISCRIMINATION
**(Jeannine Simard As to Defendant DaVita)**

193. Paragraphs 112 through 123 are incorporated herein by reference as if more fully set forth herein.

194. DaVita, through its agent, Dr. Mahnensmith's, sexual harassment, intimidation, humiliation and ridicule of women in NHDC while acting in his capacity as Plaintiff Simard's supervisor in his role as its Medical Director, discriminated against her on the basis of sex in violation of Connecticut's Fair Employment Practices Act codified at C.G.S. §46a-60(a)(8)(C).

195. As a result of DaVita's sex discrimination, Plaintiff Simard suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

196. Plaintiff Simard claims compensatory damages, punitive damages pursuant to C.G.S. §46a-104, attorney's fees and costs pursuant to C.G.S. §46a-104, interest, costs, injunctive relief and such other relief as the Court deems necessary and just.

## COUNT XVIII – CFEPA SEXUAL HARASSMENT/SEX DISCRIMINATION
### (Yvonne Robinson As to Defendant DaVita)

197. Paragraphs 127 through 137 are incorporated herein by reference as if more fully set forth herein.

198. DaVita, through its agent, Dr. Mahnensmith's, sexual harassment, intimidation, humiliation and ridicule of women in NHDC while acting in his capacity as Plaintiff Robinson's supervisor in his role as its Medical Director, discriminated against her on the basis of sex in violation of Connecticut's Fair Employment Practices Act codified at C.G.S. §46a-60(a)(8)(C).

199. As a result of DaVita's sex discrimination, Plaintiff Robinson suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

200. Plaintiff Robinson claims compensatory damages, punitive damages pursuant to C.G.S. §46a-104, attorney's fees and costs pursuant to C.G.S. §46a-104, interest, costs, injunctive relief and such other relief as the Court deems necessary and just.

**COUNT XIX – CFEPA SEXUAL HARASSMENT/SEX DISCRIMINATION**

**(Karen Lawlor As to Defendant Yale)**

201. Paragraphs 1 through 28, 32 through 35, and 48 through 61 are incorporated herein by reference as if more fully set forth herein.

202. Paragraphs 142 through 143 are incorporated herein by reference as if more fully set forth herein.

203. Defendant Yale, through its designated employee, engaged in sexual harassment, intimidation, humiliation and ridicule of women and discriminated against its de facto employee Lawlor on the basis of sex in violation of Connecticut's Fair Employment Practices Act codified at C.G.S. §46a-60(a)(8)(C).

204. As a result of Yale's sex discrimination, Plaintiff Lawlor suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

**COUNT XX – CFEPA SEXUAL HARASSMENT/SEX DISCRIMINATION**

**(Maureen Leone As to Defendant Yale)**

205. Paragraphs 1 through 28, 32 through 35, and 68 through 78 are incorporated herein by reference as if more fully set forth herein.

206. Paragraphs 142 through 143 are incorporated herein by reference as if more fully set forth herein.

207. Defendant Yale, through its designated employee, engaged in sexual harassment, intimidation, humiliation and ridicule of women and discriminated against its de facto employee Maureen Leone on the basis of sex in violation of Connecticut's Fair Employment Practices Act codified at C.G.S. §46a-60(a)(8)(C).

208.   As a result of Yale's sex discrimination, Plaintiff Leone suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

## COUNT XXI –  CFEPA SEXUAL HARASSMENT/SEX DISCRIMINATION
**(Warren Fleming As to Defendant Yale)**

209.   Paragraphs 1 through 28, 32 through 35, and 85 through 94 are incorporated herein by reference as if more fully set forth herein.

210.   Paragraphs 142 through 143 are incorporated herein by reference as if more fully set forth herein.

211.   Defendant Yale, through its designated employee, engaged in sexual harassment, intimidation, humiliation and ridicule of women and discriminated against its de facto employee Fleming on the basis of sex in violation of Connecticut's Fair Employment Practices Act codified at C.G.S. §46a-60(a)(8)(C).

212.   As a result of Yale's sex discrimination, Plaintiff Fleming suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

## COUNT XXII –  CFEPA SEXUAL HARASSMENT/SEX DISCRIMINATION
**(Kathleen Niland As to Defendant Yale)**

213.   Paragraphs 1 through 28, 32 through 35, and 102 through 108 are incorporated herein by reference as if more fully set forth herein.

214.   Paragraphs 142 through 143 are incorporated herein by reference as if more fully set forth herein.

215.   Defendant Yale, through its designated employee, engaged in sexual harassment, intimidation, humiliation and ridicule of women and discriminated against its de facto employee Niland on the basis of sex in violation of Connecticut's Fair Employment Practices Act codified at C.G.S. §46a-60(a)(8)(C).

216.   As a result of Yale's sex discrimination, Plaintiff Niland suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

## COUNT XXIII –  CFEPA SEXUAL HARASSMENT/SEX DISCRIMINATION
**(Jeannine Simard As to Defendant Yale)**

217.   Paragraphs 1 through 28, 32, 33, 35, and 115 through 123 are incorporated herein by reference as if more fully set forth herein.

218.   Paragraphs 142 through 143 are incorporated herein by reference as if more fully set forth herein.

219.   Defendant Yale, through its designated employee, engaged in sexual harassment, intimidation, humiliation and ridicule of women and discriminated against its de facto employee Plaintiff Simard on the basis of sex in violation of Connecticut's Fair Employment Practices Act codified at C.G.S. §46a-60(a)(8)(C).

220.   As a result of Yale's sex discrimination, Plaintiff Simard suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

**COUNT XXIV –  CFEPA SEXUAL HARASSMENT/SEX DISCRIMINATION**

**(Yvonne Robinson As to Defendant Yale)**

221.  Paragraphs 1 through 28, 32 through 35, and 129 through 137 are incorporated herein by reference as if more fully set forth herein.

222.  Paragraphs 142 through 143 are incorporated herein by reference as if more fully set forth herein.

223.  Defendant Yale, through its designated employee, engaged in sexual harassment, intimidation, humiliation and ridicule of women and discriminated against its de facto employee Plaintiff Robinson on the basis of sex in violation of Connecticut's Fair Employment Practices Act codified at C.G.S. §46a-60(a)(8)(C).

224.  As a result of Yale's sex discrimination, Plaintiff Robinson suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

**COUNT XXV –  TITLE IX SEX DISCRIMINATION UNDER EDUCATION PROGRAM/ACTIVITY RECEIVING FEDERAL FINANCIAL ASSISTANCE**

**(Karen Lawlor As to Defendant Yale)**

225.  Paragraph 36, and paragraphs 45 through 61 are incorporated herein by reference as if more fully set forth herein.

226.  Paragraphs 142 through 143 are incorporated herein by reference as if more fully set forth herein.

227.  At all times relevant hereto, Dr. Stefan Somlo was an agent, servant and employee of Defendant Yale serving as the Section Chief of Nephrology for Yale University's School of Medicine, Internal Medicine Department, and in a position of authority over Dr. Mahnensmith.

228.  Dr. Somlo and/or his superiors were at all times relevant hereto aware of past sexual harassment complaints lodged against Dr. Mahnensmith.

229.  Further, Dr. Somlo and/or his superiors had actual notice of Dr. Mahnensmith's ongoing sexual harassment of women and unprofessionalism in the workplace.

230.  Notwithstanding past complaints made against Dr. Mahnensmith for sexual harassment, and an ongoing awareness of his inappropriate and unprofessional conduct in his office, Yale nevertheless failed to correct the unlawful discrimination.   Rather, Yale maintained Dr. Mahnensmith in its employ and further designated him as Medical Director of the New Haven clinics under contract with DaVita where he had supervisory authority and unfettered access to female staff and patients.

231.  Pursuant to contract entered into by Defendants Yale and DaVita, Yale designated Dr. Mahnensmith to serve as Medical Director of the NHDC , in part, to train and teach nurses and technicians including the Plaintiffs in dialysis techniques and the teaching of self-dialysis.

232.  In addition, upon information and belief, Yale's School of Medicine, Nephrology Section, furthered the education of its physicians and students through training and instruction in NHDC with whom the Plaintiffs interacted as an integral part of the training and instruction.

233.  Defendant Yale is a recipient of federal funds and, upon information and belief, received federal financial assistance in its joint operation of NHDC and Acutes.

234.  Defendant Yale, through Dr. Somlo and/or his superiors, had the authority to take corrective action in response to Dr. Mahnensmith's known sexual harassment of women in NHDC and Acutes, but responded to the harassment with deliberate indifference.

235.  Dr. Mahnensmith's unwelcomed sexual assaults and harassment of Plaintiff Lawlor and other women were severe and pervasive.

236. Defendant Yale discriminated against Plaintiff Lawlor on the basis of sex under its education program in NHDC or activity receiving federal financial assistance in violation of 20 U.S.C. §1681(a).

237. As a result of Yale's sex discrimination, Plaintiff Lawlor suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

## COUNT XXVI – TITLE IX SEX DISCRIMINATION UNDER EDUCATION PROGRAM/ACTIVITY RECEIVING FEDERAL FINANCIAL ASSISTANCE

**(Maureen Leone As to Defendant Yale)**

238. Paragraphs 36, and 65 through 78 are incorporated herein by reference as if more fully set forth herein.

239. Paragraphs 142 through 143 are incorporated herein by reference as if more fully set forth herein.

240. Paragraphs 227 through 234 are incorporated herein by reference as if more fully set forth herein.

241. Dr. Mahnensmith's unwelcomed sexual assaults and harassment of Plaintiff Leone and other women were severe and pervasive.

242. As a result, Defendant Yale discriminated against Plaintiff Leone on the basis of sex under its education program in NHDC or activity receiving federal financial assistance in violation of 20 U.S.C. §1681(a).

243. As a result of Yale's sex discrimination, Plaintiff Leone suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

41

## COUNT XXVII –  TITLE IX SEX DISCRIMINATION UNDER EDUCATION PROGRAM/ACTIVITY RECEIVING FEDERAL FINANCIAL ASSISTANCE

**(Warren Fleming As to Defendant Yale)**

244.  Paragraph 36, and paragraphs 82 through 94 are incorporated herein by reference as if more fully set forth herein.

245.  Paragraphs 142 through 143 are incorporated herein by reference as if more fully set forth herein.

246.   Paragraphs 227 through 234 are incorporated herein by reference as if more fully set forth herein.

247.   Dr. Mahnensmith's unwelcomed sexual assaults and harassment of women in Plaintiff Fleming's presence were severe and pervasive.

248.  Defendant Yale discriminated against Plaintiff Fleming on the basis of sex under its education program in NHDC or activity receiving federal financial assistance in violation of 20 U.S.C. §1681(a).

249.  As a result of Yale's sex discrimination, Plaintiff Fleming suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

## COUNT XXVIII –  TITLE IX SEX DISCRIMINATION UNDER EDUCATION PROGRAM/ACTIVITY RECEIVING FEDERAL FINANCIAL ASSISTANCE

**(Kathleeen Niland As to Defendant Yale)**

250.  Paragraphs 36, and paragraphs 99 through 108 are incorporated herein by reference as if more fully set forth herein.

251.  Paragraphs 142 through 143 are incorporated herein by reference as if more fully set forth herein.

252.   Paragraphs 227 through 234 are incorporated herein by reference as if more fully set forth herein.

253.   Dr. Mahnensmith's unwelcomed sexual assaults and harassment of Plaintiff Niland and other women were severe and pervasive.

254.   Defendant Yale discriminated against Plaintiff Niland on the basis of sex under its education program in NHDC or activity receiving federal financial assistance in violation of 20 U.S.C. §1681(a).

255.   As a result of Yale's sex discrimination, Plaintiff Niland suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

## COUNT XXIX – TITLE IX SEX DISCRIMINATION UNDER EDUCATION PROGRAM/ACTIVITY RECEIVING FEDERAL FINANCIAL ASSISTANCE
**(Jeannine Simard As to Defendant Yale)**

256.   Paragraphs 36, and 112 through 123 are incorporated herein by reference as if more fully set forth herein.

257.   Paragraphs 142 through 143 are incorporated herein by reference as if more fully set forth herein.

258.   Paragraphs 227 through 234 are incorporated herein by reference as if more fully set forth herein.

259.   Dr. Mahnensmith's unwelcomed sexual assaults and harassment of Plaintiff Simard and other women were severe and pervasive.

260.   As a result, Defendant Yale discriminated against Plaintiff Simard on the basis of sex under its education program in NHDC or activity receiving federal financial assistance in violation of 20 U.S.C. §1681(a).

43

261.  As a result of Yale's sex discrimination, Plaintiff Simard suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

## COUNT XXX –  TITLE IX SEX DISCRIMINATION UNDER EDUCATION PROGRAM/ACTIVITY RECEIVING FEDERAL FINANCIAL ASSISTANCE

**(Yvonne Robinson As to Defendant Yale)**

262.  Paragraphs 36, and 127 through 137 are incorporated herein by reference as if more fully set forth herein.

263.  Paragraphs 142 through 143 are incorporated herein by reference as if more fully set forth herein.

264.  Paragraphs 227 through 234 are incorporated herein by reference as if more fully set forth herein.

265.  Dr. Mahnensmith's unwelcomed sexual assaults and harassment of Plaintiff Robinson and other women were severe and pervasive.

266.  As a result, Defendant Yale discriminated against Plaintiff Robinson on the basis of sex under its education program in NHDC or activity receiving federal financial assistance in violation of 20 U.S.C. §1681(a).

267.  As a result of Yale's sex discrimination, Plaintiff Robinson suffered humiliation, degradation, anxiety, fear, emotional distress, psychological injury, exacerbation of physical conditions and other damages.

## COUNT XXXI – INTENTIONAL SEXUAL ASSAULT

**(Plaintiff Lawlor As to Dr. Leroy Rex Mahnensmith)**

268.  Paragraphs 1 through 28 are incorporated herein by reference as if more fully set forth herein.

269. On or about early November, 2013, Plaintiff Karen Lawlor was sitting in the conference room in DaVita at Home eating lunch and attending a Patient Care Conference when Dr. Mahnensmith approached her from behind in an unwelcomed and offensive manner and began thrusting his pelvis into the back of her chair in a sexual way rocking it to and fro.

270. On two separate occasions on or about the Summer of 2013, Plaintiff Lawlor was in a dialysis room with a patient in DaVita at Home with Dr. Mahnensmith. In the presence of the patients Dr. Mahnensmith told Plaintiff Lawlor she had done a good job and slapped her on the rear end three times in an offensive and unwelcomed manner.

271. On or around May to June, 2013, Dr. Mahnensmith touched Plaintiff Lawlor's breast in an offensive and unwelcomed manner in the presence of Plaintiff Leone during a Patient Care Conference in the conference room at DaVita at Home.

272. On diverse dates up to and including December 10, 2013, Dr. Mahnensmith touched and rubbed Plaintiff Lawlor on her stomach, waist and thighs in an offensive and unwelcomed manner.

273. Dr. Mahnensmith's contact with Plaintiff Lawlor was offensive and harmful.

274. Dr. Mahnensmith in each instance intended to cause contact to the Plaintiff Lawlor in a sexual manner.

275. On each such occasion alleged Dr. Mahnensmith did contact, directly or indirectly, Plaintiff Lawlor with his body and actions.

276. As a result of the intentional sexual assaults, Plaintiff Lawlor has suffered, and continues to suffer, damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, intimidation, embarrassment, sleeplessness and lost enjoyment of life.

## COUNT XXXII – INTENTIONAL SEXUAL ASSAULT

**(Plaintiff Niland As to Dr. Leroy Rex Mahnensmith)**

277.   Paragraphs 1 through 28 are incorporated herein by reference as if more fully set forth herein.

278.   On or about July, 2013 Plaintiff Niland, while working at DaVita at Home, was sitting on a stool in a patient's room facing the patient and away from the door when suddenly from behind Dr. Mahnensmith pressed his erect penis against her back while sternly holding and rubbing her shoulders in an unwelcomed and offensive manner.

279.   Dr. Mahnensmith's contact with Plaintiff Niland was offensive and harmful.

280.   Dr. Mahnensmith intended to cause contact to the Plaintiff Niland in a sexual manner.

281.   Dr. Mahnensmith did contact Plaintiff Niland with his body and actions.

282.   As a result of the intentional sexual assault, Plaintiff Niland has suffered, and continues to suffer, damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, intimidation, embarrassment, sleeplessness and lost enjoyment of life.

## COUNT XXXIII – INTENTIONAL SEXUAL ASSAULT

**(Plaintiff Robinson As to Dr. Leroy Rex Mahnensmith)**

283.   Paragraphs 1 through 28 are incorporated herein by reference as if more fully set forth herein.

284.   On or about 2012, Dr. Mahnensmith touched Plaintiff Yvonne Robinson's breast in an offensive and unwelcomed manner while she was working in Acutes.

285.   On or about that same year, Dr. Mahnensmith slapped Plaintiff Yvonne Robinson on the buttocks in an offensive and unwelcomed manner while she was working in Acutes.

286. Dr. Mahnensmith's contact with Plaintiff Robinson on both occasions was offensive and harmful.

287. Dr. Mahnensmith intended to cause contact to the Plaintiff Robinson on both occasions in a sexual manner.

288. Dr. Mahnensmith did contact Plaintiff Robinson on both occasions with his body and actions.

289. As a result of the intentional sexual assaults, Plaintiff Robinson has suffered, and continues to suffer, damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, intimidation, embarrassment, sleeplessness and lost enjoyment of life.

## COUNT XXXIV– INTENTIONAL SEXUAL ASSAULT

**(Plaintiff Simard As to Dr. Leroy Rex Mahnensmith)**

290. Paragraphs 1 through 28 are incorporated herein by reference as if more fully set forth herein.

291. On or about November 26, 2013, Plaintiff Jeannine Simard as the Clinical Service Specialist was attending a meeting in DaVita at Home's large conference room. As she sat at the table with Plaintiffs Karen Lawlor, Warren Fleming and Maureen Leone, and Laurie Gadzik, Dr. Mahnensmith entered the room and stood directly behind Plaintiff Simard thrusting his pelvis in a sexual manner into the back of her chair rocking her to and fro in an unwelcomed and offensive manner. When offered a seat and told by Plaintiff Fleming to sit down, Dr. Mahnensmith commented to the group with a smirk, "I'm not finished yet" and continued to sexually gratify himself until he stated he was finished.

292.   Previously on November 21, 2013 Dr. Mahnensmith had sat next to Plaintiff Simard at the same conference room table and run his socked foot down the side of her from her armpit, over the side of her breast, to her hip in an offensive and unwelcomed manner.

293.   On or around May to June, 2013, Dr. Mahnensmith touched Plaintiff Simard's breast in an offensive and unwelcomed manner in the presence of Plaintiff Leone during a Patient Care Conference in the conference room at DaVita at Home.

294.   Dr. Mahnensmith's contact with Plaintiff Simard on each occasion was offensive and harmful.

295.   Dr. Mahnensmith intended to cause contact to the Plaintiff Simard on each occasion in a sexual manner.

296.   Dr. Mahnensmith did contact Plaintiff Simard on each occasion with his body and actions.

297.   As a result of the intentional sexual assaults, Plaintiff Simard has suffered, and continues to suffer, damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, intimidation, embarrassment, sleeplessness and lost enjoyment of life.

**COUNT XXXV –TITLE VII RETALIATION**

**(All Plaintiffs As to Defendant DaVita)**

298.   Paragraphs 1 through 35, 37 through 38, and 40 through 44 are incorporated herein by reference as if more fully set forth herein.

299.   On or about November 26, 2013, Plaintiff Jeannine Simard was working in NHDC and attending a meeting in DaVita at Home's conference room.  She was seated at the conference room table with Plaintiffs Karen Lawlor, Warren Fleming, and Maureen Leone, and Laurie Gadzik when Dr. Mahnensmith entered the room and stood directly behind Plaintiff

48

Simard thrusting his pelvis in a sexual manner into the back of her chair rocking it to and fro. In an effort to stop him, Plaintiff Fleming offered Dr. Mahnensmith a seat and told him to sit down. Dr. Mahnensmith replied with a smirk, "I'm not finished yet", and continued to sexually gratify himself until announcing to the group that he was finished.

300. On December 2, 2013, Plaintiff Simard told GFA Libby Chiapperino about Dr. Mahnensmith's misconduct; that same date Elizabeth Chiapperino contacted VP Elise Duke to report the misconduct and other similar misconduct she had learned of.

301. After learning of the reported sexual misconduct, VP Duke trivialized the Teammates' reactions to Dr. Mahnensmith's misconduct and expressed concern to GFA Elizabeth Chiapperino about the impact of the accusations on DaVita's relationship with Yale.

302. On or about December 10, 2013 Plaintiffs Lawlor, Leone, Niland, Robinson and Simard were interrogated by DaVita about Dr. Mahnensmith's ongoing sexual harassment in the workplace.

303. Thereafter, on or about December 12, 2013, and unbeknownst to any of the Plaintiffs, FA Parmalee or GFA Chiapperino, Dr. Mahnensmith was informed by VP Elise Duke that complaints had been made against him by Teammates at NHDC. Dr. Mahnensmith was not placed on administrative leave pending investigation nor restricted in any way from entering the clinic.

304. VP Elise Duke failed to warn any of the Plaintiffs, FA Parmalee or GFA Chiapperino in advance that Dr. Mahnensmith would be notified of the allegations, and failed further to protect any of the Plaintiffs or advise FA Parmalee or GFA Chiapperino how to protect the Teammates from retaliatory behaviors.

305.  Within a few hours of learning of the allegations, Dr. Mahnensmith entered DaVita at Home on December 12, 2013, and confronted Maureen DeMatteo demanding to know who had filed complaints against him.  Having learned of the confrontation from Maureen DeMatteo, FA Parmalee privately suggested to Dr. Mahnensmith that he should consider leaving the premises given the circumstances.  Dr. Mahnensmith interacted with FA Parmalee in a verbally and physically threatening manner inciting extreme fear, intimidation and anxiety among the Teammates.

306.  As a result of the confrontation, and intimidating and threatening behaviors of Dr. Mahnensmith the Teammates were too fearful to return to work the following day and DaVita at Home was forced to close on December 13, 2013.

307.  On that same date ROD Brian Karstetter summoned the Teammates and FA Parmalee to a meeting in DaVita's Hamden clinic.  FA Parmalee was directed by ROD Karstetter not to invite GFA Libby Chiapperino to the meeting.  Plaintiffs Lawlor, Leone, Fleming, Niland, Parmalee, and Robinson and Maureen DeMatteo were informed at the meeting by ROD Karstetter and PSM Paul Santanello that Dr. Mahnensmith would continue to have access to the clinic to treat patients causing the teammates undue fear and anxiety.  Plaintiffs Lawlor, Leone, Fleming, Niland, and Robinson as well as FA Parmalee and Maureen DeMatteo verbally charged Dr. Mahnensmith with sexual harassment and discrimination at the meeting. ROD Karstetter and PSM Santanello were dismissive of the teammates and advised those in attendance not to be "overly dramatic" or "overly reactive" demeaning the severity of their complaints and fears.  The Plaintiffs in attendance requested additional paid time off due to the circumstances above their allotted PTO as some had no PTO days left; DaVita management never responded to and/ or

refused their request causing unnecessary stress and anxiety to the Plaintiffs. Laurie Gadzik, manager of the Hemo Unit at that time, never returned to work.

308.   On December 23, 2013 Plaintiffs were informed by DaVita that Dr. Mahnensmith had taken a "leave of absence", but was not informed one way or the other if Dr. Mahnensmith would be allowed to return thereby causing further stress and fear to the Teammates.

309.   Due to articulated safety concerns for the reporting Teammates, the presence of drug seeking patients, and the presence of patients detoxing from narcotics no longer prescribed in Dr. Mahnensmith's absence, FA Parmalee repeated earlier requests to DaVita for a security guard; no security guard was provided increasing Plaintiffs' fear and anxiety.

310.   After nearly a month of fearing for their safety in the workplace and repeated requests, permission for a security guard in DaVita at Home was granted on or about January 8, 2014 to be paid for from NHDC's budget.

311.   FA Parmalee requested additional staff support due to a staff shortage, safety issues, his need to implement a State of Connecticut Department of Public Health Correction Plan, and the clinic's need to deal with exacerbated behavioral issues due to detoxing patients and policy enforcement adversely affecting staff and his ability to manage NHDC. DaVita denied his request though by accommodating this request the stress and other damages suffered by the Teammates would likely have decreased.

312.   As a result of staff shortages, NHDC was operating at the peril of its staff and patients, and overtaxing existing staff coping with the fallout of Dr. Mahnensmith's removal. To retain staff, FA Parmalee requested pay increases which request was also denied causing the Plaintiffs to feel penalized for their complaints.

313.  Plaintiffs Fleming's, Lawlor's, Leone's, Niland's, Robinson's and Simard's verbal and written complaints of sexual harassment toward women in the workplace were protected activities under Title VII and known to DaVita.

314.  DaVita managers Duke, Karstetter and Santanello acted adversely and offensively to Plaintiffs Fleming, Lawlor, Leone, Niland, Robinson and Simard in one or more of the following ways:

  a.  by chastising and demeaning the severity of Plaintiffs' complaints of unlawful sexual harassment and discriminatory misconduct;

  b.  by ridiculing Plaintiffs' reactions to their Supervisor's unlawful and discriminatory misconduct;

  c.  by failing to warn Plaintiffs that Dr. Mahnensmith had been informed of the allegations of misconduct by staff at NHDC;

  d.  by allowing Dr. Mahnensmith free access to the clinic once informed of the allegations of misconduct inciting fear in the workplace;

  e.  by allowing Dr. Mahnensmith to confront Nurse DeMatteo and FA Parmalee in the clinic on or about December 12, 2013 about the allegations of misconduct;

  f.  by failing to adequately protect and support Plaintiffs after their complaints of unlawful misconduct;

  g.  by refusing to provide adequate staffing in NHDC causing safety risks to Plaintiffs and patients alike;

  h.  by refusing to implement added pay structures for Plaintiffs at NHDC covering for staff shortages and managing detoxing, belligerent patients;

i. by refusing to support NHDC's onsite management coping with staffing shortages, staff in crisis, patients in crisis, and management deficiencies;

j. by ostracizing GFA Chiapperino for supporting Plaintiffs' charges of sexual harassment and discrimination confirming for Plaintiffs DaVita's opposition to their complaints and essentially removing their managerial support and protection;

k. by failing to support onsite management for opposing the unlawful sexual misconduct and for supporting Plaintiffs' charges of sexual harassment causing a divide in the management of NHDC thereby furthering the divide between Plaintiffs and their employer.

315. Plaintiff Fleming, due to the heightened stress and tension of the hostile and retaliatory work environment, after 16 years of dedicated service to NHDC, involuntarily transferred to DaVita's Bridgeport clinic in June, 2014 heightening anxiety among the remaining Teammates to a demoted position and ultimately prematurely retire from DaVita in November, 2014.

316. Laurie Gadzik, due to the heightened stress and tension of the hostile and retaliatory work environment, after 5 years of service to NHDC transferred out of NHDC to a lesser position and ultimately left her employment with DaVita.

317. Plaintiff Lawlor, due to the heightened stress and tension of the hostile and retaliatory work environment, involuntarily resigned from NHDC in July, 2014 to take a position with fewer benefits and in a new field where she had less experience and training.

318. By these unlawful adverse employment actions DaVita discriminated against Plaintiffs for charging their Supervisor, Dr. Mahnensmith, with unlawful employment practices in violation of 42 U.S.C. §2000e-3(a).

319. DaVita's adverse employment actions were caused by Plaintiffs' protected activity in reporting unlawful and discriminatory sexual harassment.

320. DaVita's adverse employment actions by Managers Duke, Karstetter and Santanello bore the imprimatur of the enterprise.

321. As a result of DaVita's unlawful retaliation and offensive adverse employment actions, Plaintiffs suffered damages, including but not limited to, psychological damage, back pay, front pay, lost benefits, lost employment opportunities, negative employment histories, exacerbation of medical conditions, undue stress, loss of sleep, and loss of the enjoyment of life.

## COUNT XXXVI – CFEPA RETALIATION

**(All Plaintiffs As to Defendant DaVita)**

322. Paragraphs 298 through 312, and paragraphs 314 through 317 are incorporated herein by reference as if more fully set forth herein.

323. Plaintiffs' complaints of sexual harassment toward women in the workplace were protected activities under the Connecticut Fair Employment Practices Act and known to DaVita.

324. By these unlawful adverse employment actions DaVita discriminated against Plaintiffs for charging their Supervisor, Dr. Mahnensmith, and thus DaVita, with unlawful employment practices in violation of C.G.S. §46a-60(a)(4).

325. DaVita's adverse employment actions were caused by Plaintiffs' protected activity in reporting unlawful and discriminatory sexual harassment.

326. DaVita's adverse employment actions by Managers Duke, Karstetter and Santanello bore the imprimatur of the enterprise.

327. As a result of DaVita's unlawful retaliation and offensive adverse employment actions, Plaintiffs suffered damages, including but not limited to, psychological damage, lost

wages and benefits, lost employment opportunities, negative employment histories, exacerbation of medical conditions, undue stress, loss of sleep, and lost enjoyment of life.

## COUNT XXXVII– NEGLIGENT FAILURE TO SUPERVISE

**(All Plaintiffs as to Defendant Yale)**

328.  Paragraphs 1 though 28, 32 through 40, and 44 are incorporated herein by reference as if more fully set forth herein.

329.  At all times relevant hereto Yale had a duty to supervise its employee, Dr. Mahnensmith, acting as its agent, servant and employee in his designation as Medical Director of NHDC and Acutes.

330.  At all times relevant hereto, Dr. Robert Alpern was the Dean of the Yale School of Medicine, and as such is an agent, servant and employee of the Defendant Yale.  In such capacity he was the supervisor of the Defendant Dr. Mahnensmith.  His specialty is in the area of Nephrology as is the Defendant Dr. Mahnensmith's specialty.

331.  At all times relevant hereto, Dr. Stefan Somlo was an agent, servant and employee of Defendant Yale serving as the Section Chief of Nephrology for Yale University's School of Medicine, Internal Medicine Department, and in a position of authority over Dr. Mahnensmith.

332.  Dr. Alpern and Dr. Somlo knew or should have known of past sexual harassment complaints lodged against Dr. Mahnensmith, as well as reports of is bizarre and unacceptable behavior within the workplace.

333.  Further, Dr. Alpern, Dr. Somlo and other attending physicians employed by Yale and working in NHDC were aware of Dr. Mahnensmith's ongoing sexual harassment of women and unprofessionalism in the workplace.

334.   Notwithstanding past complaints made against Dr. Mahnensmith for sexual harassment, and an ongoing awareness of his inappropriate and unprofessional conduct,  Dr. Alpern, Dr. Somlo and Yale nevertheless maintained Dr. Mahnensmith in its employ and further designated him as Medical Director of the New Haven clinics under contract with DaVita where he had unfettered access to female staff and patients.

335.   Notwithstanding past complaints made against Dr. Mahnensmith for sexual harassment, and an ongoing awareness of inappropriate and unprofessional conduct in his Yale office, Dr. Alpern, Dr. Somlo and Yale failed to supervise Dr. Mahnensmith in NHDC and/or warn FA Parmalee or GFA Chiapperino of Dr. Mahnensmith's propensity for sexual harassment and sexual misconduct.

336.   Dr. Mahnensmith, as an employee of Yale designated to serve as DaVita's Medical Director of NHDC, was unsupervised and unchecked by Defendant Yale although Dr. Alpern, Dr. Somlo and other physicians employed by Yale were aware of his sexual harassment towards women and unprofessional behavior.  Yale's failure to stop Dr. Mahnensmith's sexual harassment projected a culture of tolerance by his employer of his misconduct to Plaintiffs Lawlor, Leone, Fleming, Niland, Robinson, and Simard and further, signaled to them that formal complaints of his sexual harassment did not deter his behavior or impact his continued employment with Yale.

337.   In failing to supervise or check Dr. Mahnensmith in his role as its designated Medical Director of NHDC, Yale enabled Dr. Mahnensmith's misconduct, sexual and otherwise.

338.   The failure of Dr. Alpern, Dr. Somlo and Yale to properly supervise or check Dr. Mahnensmith was the result of a continuous pattern and practice of negligently supervising physicians within the Yale School of Medicine.  This pattern and practice of negligently

56

supervising physicians, including Dr. Mahnensmith, had been an ongoing course of conduct at

the Yale Medical School under the direction and leadership of Dr. Alpern and Dr. Somlo.

339.  Dr. Alpern negligently failed to appropriately supervise Dr. Mahnensmith, among

other physicians at Yale, because Dr. Mahnensmith is a source of income to the Yale School of

Medicine through his association with DaVita.  Dr. Alpern's official belief as Dean is that Yale

Medical School 'wants to get the best people', however, Dr. Alpern believes that 'we're always

trying to help the best people succeed, and sometimes the best people, some best people, don't

behave as well as other best people'.

340.  Dr. Alpern negligently failed to appropriately supervise Dr. Mahnensmith based

on his pattern and practice of failing to supervise physicians who engage in sexual harassment or

other breaches of operational protocols if those physicians are successful at bringing grant

money or corporate funding to the Yale School of Medicine.  Dean Alpern's negligent

supervision of these physicians based on their ability to obtain grants or earn corporate income

has led to a 'general culture' at Yale Medical School that bad behavior such as that exhibited by

the Defendant Dr. Mahnensmith would be tolerated.

341.  Dean Alpern's practice and policy of negligently supervising Dr. Mahnensmith

has resulted in a practice of tolerating unacceptable sexual behavior and other breaches of

operational protocols by Dr. Mahnensmith and other physicians.  As a result, a culture was

created at Yale where employees of Yale, and employees of DaVita who are directly supervised

by Yale personnel and who derive their income and positions through DaVita's association with

the Nephrology Department at Yale, are reluctant to report sexual harassment and other breaches

of operational protocol.

342.   Yale, through its employees including Dr. Alpern and, Dr. Somlo, failed to exercise reasonable care in the supervision of Dr. Mahnensmith in one or more of the following ways:

a. Yale knew or should have known of Dr. Mahnensmith's proclivity to sexually harass women in the workplace and could have anticipated thereby the general harm to Plaintiffs, but nevertheless failed to fully and completely advise DaVita, is agents, servants and employees, of Dr. Mahnensmith's proclivities;

b. Yale knew or should have known of past complaints against Dr. Mahnensmith for sexual harassment and could have anticipated thereby the general harm to Plaintiffs, but nevertheless failed to properly supervise Dr. Mahnensmith given his previous history of complaints;

c. Yale knew or should have known of an ongoing need to heighten supervision of Dr. Mahnensmith due to past complaints and could have anticipated the general harm to Plaintiffs, yet nevertheless failed to do so and/ or to warn DaVita to do the same; and

d. Yale failed to institute, or enforce, appropriate policies, procedures, and reporting mechanisms to prevent sexual harassment and other breaches of operational protocols by its employee, particularly as it relates to employees of DaVita, who were required by contract to report to, and directly work with, Dr. Mahnensmith;

e. Upon information and belief, Yale had the capability of tracking its physicians' prescription orders.  As a result, Yale knew or should have known Dr. Mahnensmith was prescribing excessive narcotics to NHDC's patients and nevertheless failed to supervise his prescription orders and/or alert DaVita to supervise him in this regard, thereby allowing Dr.

Mahnensmith to operate in complete disregard of applicable policies and thereby placing the Plaintiffs and others at risk should they confront him regarding these breaches of protocols;

      f.  Defendant Yale, in particular Dr. Somlo and the attending physicians who interacted with Dr. Mahnensmith, failed to share known preventative measures with the Plaintiffs, or supervisors at DaVita, such as its open door policy in the Nephrology Section of Yale's School of Medicine prohibiting Dr. Mahnensmith from being behind closed doors with individual female employees of Yale as a result of his unacceptable behavior.  By not sharing these preventative measures, Yale failed to provide appropriate means for adequate supervision of Dr. Mahnensmith that would have resulted in a safer work environment in NHDC.

      g.  Yale failed to exercise reasonable care so as to prevent its employee Dr. Mahnensmith from acting outside the scope of his employment and consequently prevent him from conducting himself as to create an unreasonable risk of bodily harm to the Plaintiffs while working on its property at 100 Church Street South, New Haven, CT; and

      343.  As a result of Yale's negligent failure to supervise Dr. Mahnensmith, Plaintiffs suffered the following injuries:

      a.  sexual harassment and assault;

      b.  psychological abuse and emotional distress;

      c.  sleeplessness;

      d.  inability to perform their jobs;

      e.  undue stress from a protracted hostile work environment resulting from both Dr. Mahnensmith's misconduct and drug seeking and addicted patients;

      f.  protracted anxiety and fear for their personal safety;

      g.  stress;

h.  exacerbation of physical conditions and illnesses;

i.  loss of job positions at a place of employment that the Plaintiffs Lawlor and Fleming fully enjoyed;

j. loss of pay for lost time at work;

k. loss of opportunities for advancement at DaVita; and

l.  money damages.

## COUNT XXXVIII– NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (All Plaintiffs as to Defendant Yale)

344.  Paragraphs 328, and paragraphs 330 through 342 are incorporated herein by reference as if more fully set forth herein.

345.  Defendant Yale's conduct created an unreasonable and foreseeable risk of causing the Plaintiffs emotional distress.

346.  Plaintiffs' emotional distress was severe enough that it might result in illness or bodily harm.

347.  Defendant Yale's conduct caused the Plaintiffs severe emotional distress.

## COUNT XXXIX– INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (All Plaintiffs as to Defendant Dr. Mahnensmith)

348.  Paragraphs 1 through 28, 31 through 35, and 37 through 38 are incorporated herein by reference as if more fully set forth herein.

349.  Dr. Mahnensmith intended to inflict emotional distress on Plaintiffs or knew or should have known that his misconduct would likely result in Plaintiffs' emotional distress.

350.  Dr. Mahnensmith's sexual harassment and sexual assaults were extreme and outrageous.

351. Dr. Mahnensmith's flagrant violations of DaVita policy and procedures were extreme and outrageous.

352. Dr. Mahnensmith's flagrant violations of DaVita's and Yale's medical bylaws were extreme and outrageous.

353. Dr. Mahnensmith's misconduct caused Plaintiffs severe emotional distress.

## COUNT XL– NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (All Plaintiffs as to Defendant Mahnensmith)

354. Paragraphs 1 through 28, 32, 35, and 37 through 38 are incorporated herein by reference as if more fully set forth herein.

355. Dr. Mahnensmith's conduct created an unreasonable and foreseeable risk of causing Plaintiffs severe emotional distress.

356. By his conduct Dr. Mahnensmith caused Plaintiffs' emotional distress severe enough that it might result in illness or bodily harm.

## COUNT XLI–NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (RESPONDEAT SUPERIOR)

### (All Plaintiffs as to Defendant Yale)

357. Paragraphs 1 through 28, 32, 35, and 37 through 38 are incorporated herein by reference as if more fully set forth herein.

358. Dr. Mahnensmith's conduct created an unreasonable and foreseeable risk of causing Plaintiffs severe emotional distress.

359. By his conduct Dr. Mahnensmith caused Plaintiffs emotional distress severe enough that it might result in illness or bodily harm.

360.  Defendant Yale is vicariously liable for the actions of its employee, Dr. Mahnensmith, while acting in the course of his employment as Yale's designated Medical Director for DaVita, under the doctrine of respondeat superior.

PRAYER FOR RELIEF

WHEREFORE Plaintiffs claim against DaVita the following relief:

1.   Compensatory Damages;

2.   Punitive Damages;

3.   Back Pay, Future Pay and lost benefits;

4.   Attorney's fees and Expert witness fees;

5.   Costs;

6.   Interest;

7.   An Order requiring DaVita to provide professional sexual harassment training to all physicians working in its clinics;

8.   An Order requiring DaVita to supervise third parties working in its clinics/facilities and maintain a formal evaluation policy whereby employees can anonymously evaluate their superiors and Medical Directors without retaliation or recourse; and

9.   An order requiring DaVita to post sexual harassment awareness information in all clinics and a confidential designated anonymous hotline for reporting incidences of sexual harassment; and

10. Such other relief as the Court deems just and necessary.

WHEREFORE, Plaintiffs claim against Yale the following relief:

1. Compensatory damages;

2. Punitive damages;

3. Attorney's Fees and Expert Witness Fees;

4. Costs;

5. Interest:

6. An Order requiring Yale to provide professional sexual harassment training to all its faculty and physicians in keeping with Connecticut law for supervisors;

7. An Order requiring Yale to supervise its employees acting as its designated agents and maintain a formal evaluation policy whereby employees or third parties can confidentially evaluate their superiors without retaliation or recourse;

8. Such other relief as the Court deems just and necessary.

WHEREFORE, Plaintiffs claim against Dr. Mahnensmith the following relief:

1.  Compensatory Damages;

2.  Punitive Damages;

3.  Attorney's Fees and Costs;

4.  Interest:

5.  A permanent injunction enjoining Dr. Mahnensmith from making contact with any of the Plaintiffs anywhere and from entering any of DaVita's CT clinics and adjacent parking lots where Plaintiffs are or may be working;

6.  Such other relief as the Court deems just and necessary.

THE PLAINTIFFS,
Karen Lawlor, Maureen Leone, Warren Fleming
Kathleen Niland, Yvonne Robinson, and Jeannine
Simard

By_____/s/_____
    Jennifer L. Zito
    204 East Main Street
    P.O. Box 2455
    Meriden, CT  06450
    (203) 238-0808 phone
    (203) 630-1133 fax
    attyjzito@yahoo.com
    Federal Bar No. 03510

THEIR ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Karen Lawlor, Maureen Leone, Warren | : | |
| Fleming, Kathleen Niland, Yvonne Robinson: | | |
| And Jeannine Simard | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | COMPLAINT AND JURY DEMAND |
| | : | |
| DVA Renal Healthcare, Inc., Yale | : | |
| University and Dr. Leroy Rex Mahnensmith | : | February 12, 2015 |
| | : | |
| | : | |
| Defendants. | : | |

## JURY DEMAND

Plaintiffs demand a JURY trial on all claims properly triable by jury.

THE PLAINTIFFS,
Karen Lawlor, Maureen Leone, Warren Fleming
Kathleen Niland, Yvonne Robinson, and Jeannine
Simard

By_____/s/_____
Jennifer L. Zito
204 East Main Street
P.O. Box 2455
Meriden, CT  06450
(203) 238-0808 phone
(203) 630-1133 fax
attyjzito@yahoo.com
Federal Bar No. 03510

THEIR ATTORNEY

EXHIBIT 1

# STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Warren Fleming
**COMPLAINANT**

CHRO No. 1430487

vs.

DVA Renal Healthcare, Inc. ("Davita")          EEOC No. 16A-2014-01116
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint.  The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business.  If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.


June 26, 2014
DATE                          Tanya A. Hughes, Executive Director

cc:  Jennifer L. Zito, Esq., via email: attyjzito@yahoo.com
     Michael G. Caldwell, Esq., via email: michael.caldwell@leclairryan.com

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Karen Lawlor
**COMPLAINANT**

CHRO No. 1430489

vs.

DVA Renal Healthcare, Inc. ("Davita")
**RESPONDENT**

EEOC No. 16A-2014-01118

## RELEASE OF JURISDICTION

**The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.**

**A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

June 26, 2014
DATE

*Tanya A. Hughes*

Tanya A. Hughes, Executive Director

cc:   Jennifer L. Zito, Esq., via email: attyjzito@yahoo.com
      Michael G. Caldwell, Esq., via email: michael.caldwell@leclairryan.com

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Maureen Leone
**COMPLAINANT**

CHRO No. 1430491

vs.

DVA Renal Healthcare, Inc. ("Davita")          EEOC No. 16A-2014-01120
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

June 26, 2014
DATE

_Tanya A. Hughes_
Tanya A. Hughes, Executive Director

cc:  Jennifer L. Zito, Esq., via email: attyjzito@yahoo.com
     Michael G. Caldwell, Esq., via email: michael.caldwell@leclairryan.com

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Kathleen Niland
**COMPLAINANT**

CHRO No. 1430493

vs.

DVA Renal Healthcare, Inc. ("Davita")          EEOC No. 16A-2014-01122
**RESPONDENT**

## RELEASE OF JURISDICTION

**The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.**

**A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

June 26, 2014
DATE

_Tanya A. Hughes_
Tanya A. Hughes, Executive Director

cc:   Jennifer L. Zito, Esq., via email: attyjzito@yahoo.com
      Michael G. Caldwell, Esq., via email: michael.caldwell@leclairryan.com

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Yvonne Robinson
**COMPLAINANT**

CHRO No. 1430497

vs.

DVA Renal Healthcare, Inc. ("Davita")          EEOC No. 16A-2014-01131
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

June 26, 2014
DATE

_Tanya A. Hughes_
Tanya A. Hughes, Executive Director

CC:   Jennifer L. Zito, Esq., via email: attyjzito@yahoo.com
      Michael G. Caldwell, Esq., via email: michael.caldwell@leclairryan.com

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Jeannine Simard
**COMPLAINANT**

CHRO No. 1430499

vs.

DVA Renal Healthcare, Inc. ("Davita")          EEOC No. 16A-2014-01133
**RESPONDENT**

## RELEASE OF JURISDICTION

**The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.**

**A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

June 26, 2014                           *Tanya A. Hughes*
DATE                                    ─────────────────────────
                                        Tanya A. Hughes, Executive Director

cc:   Jennifer L. Zito, Esq., via email: attyjzito@yahoo.com
      Michael G. Caldwell, Esq., via email: michael.caldwell@leclairryan.com

EXHIBIT 2



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Room 475
Boston, MA 02203-0506
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

Charge Number: 16A-2014-01116C

## CERTIFICATE

Pursuant to 1601.28 (a) (2) of the Equal Employment Opportunity Commission's Regulations, this is to certify that it is probable that the Commission will be unable to complete its administrative processing of the above referenced charge, due to pending workload within 180 days from the filing of the charge.

JUL 2 3 2014
_____
Date

_____
Feng K. An
Director

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Warren Fleming<br>455 Park Avenue Unit 38<br>Bridgeport, CT 06604 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16A-2014-01116** | **Anne R. Giantonio,**<br>**Intake Supervisor** | **(617) 565-3189** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Feng K. An,**
**Area Office Director**

JUL 2 3 2014

*(Date Mailed)*

cc:

DVA RENAL HEALTHCARE INC (DAVITA)
2000 16th Street
Denver, CO 80202



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Boston Area Office

John F. Kennedy Federal Building
Government Center
Room 475
Boston, MA 02203-0506
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

Charge Number: 16A-2014-01118C

## CERTIFICATE

Pursuant to 1601.28 (a) (2) of the Equal Employment Opportunity Commission's Regulations, this is to certify that it is probable that the Commission will be unable to complete its administrative processing of the above referenced charge, due to pending workload within 180 days from the filing of the charge.

JUL 2 3 2014
_____
Date

_____
Feng K. An
Director

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Karen Lawlor<br>482 Heritage Village, Unit A<br>Southbury, CT 06488 | From: **Boston Area Office**<br>**John F. Kennedy Fed Bldg**<br>**Government Ctr, Room 475**<br>**Boston, MA 02203** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16A-2014-01118** | **Anne R. Giantonio,**<br>**Intake Supervisor** | **(617) 565-3189** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for **any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Feng K. An,
**Area Office Director**

JUL 2 3 2014
*(Date Mailed)*

Enclosures(s)

cc:

DVA RENAL HEALTHCARE INC (DAVITA)
2000 16th Street
Denver, CO 80202



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Room 475
Boston, MA 02203-0506
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

Charge Number: 16A-2014-01120C

## CERTIFICATE

Pursuant to 1601.28 (a) (2) of the Equal Employment Opportunity Commission's Regulations, this is to certify that it is probable that the Commission will be unable to complete its administrative processing of the above referenced charge, due to pending workload within 180 days from the filing of the charge.

JUL 2 3 2014
_____
Date

_____
Feng K. An
Director

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: Maureen Leone<br>18 Doral Farm Road<br>North Branford, CT 06471 | From: Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|

| [ ] | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2014-01120 | Anne R. Giantonio,<br>Intake Supervisor | (617) 565-3189 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice**. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Feng K. An,
**Area Office Director**

JUL 23 2014

(Date Mailed)

Enclosures(s)

cc:

DVA RENAL HEALTH CARE INC (DAVITA)
2000 16th Street
Denver, CO 80202



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Room 475
Boston, MA 02203-0506
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

Charge Number: 16A-2014-01122C

## CERTIFICATE

Pursuant to 1601.28 (a) (2) of the Equal Employment Opportunity Commission's Regulations, this is to certify that it is probable that the Commission will be unable to complete its administrative processing of the above referenced charge, due to pending workload within 180 days from the filing of the charge.

JUL 2 3 2014
_____
Date

_____
Feng K. An
Director

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Kathleen Niland<br>43 Dogwood Drive<br>Shelton, CT 06484 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2014-01122 | Anne R. Giantonio,<br>Intake Supervisor | (617) 565-3189 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_____
**Feng K. An,**
**Area Office Director**

JUL 2 3 2014
*(Date Mailed)*

cc:

DVA RENAL HEALTHCARE INC (DAVITA)
2000 16th Street
Denver, CO 80202



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Room 475
Boston, MA 02203-0506
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

Charge Number: 16A-2014-01131C

## CERTIFICATE

Pursuant to 1601.28 (a) (2) of the Equal Employment Opportunity Commission's Regulations, this is to certify that it is probable that the Commission will be unable to complete its administrative processing of the above referenced charge, due to pending workload within 180 days from the filing of the charge.

JUL 2 3 2014
_____
Date

_____
Feng K. An
Director

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Yvonne Robinson<br>6 West River Street #182<br>Milford, CT 06460 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16A-2014-01131** | **Anne R. Giantonio,**<br>**Intake Supervisor** | **(617) 565-3189** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Feng K. An,**
**Area Office Director**

JUL 2 3 2014

*(Date Mailed)*

Enclosures(s)

cc:

**DVA RENAL HEALTHCARE INC. DAVITA**
**2000 16th Street**
**Denver, CO 80202**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Room 475
Boston, MA 02203-0506
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

Charge Number: 16A-2014-01133C

## CERTIFICATE

Pursuant to 1601.28 (a) (2) of the Equal Employment Opportunity Commission's Regulations, this is to certify that it is probable that the Commission will be unable to complete its administrative processing of the above referenced charge, due to pending workload within 180 days from the filing of the charge.

JUL 2 3 2014
_____
Date

_____
Feng K. An
Director

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Jeannine Simard<br>19 Mayflower Road<br>Milford, CT 06460 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2014-01133 | Anne R. Giantonio,<br>Intake Supervisor | (617) 565-3189 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____
Feng K. An,
**Area Office Director**

JUL 23 2014
*(Date Mailed)*

Enclosures(s)

cc:

DVA RENAL HEALTHCARE INC DAVITA
2000 16th Street
Denver, CO 80202

EXHIBIT 3

## **STATUTE OF LIMITATIONS TOLLING AGREEMENT**

This Statute of Limitations Tolling Agreement (the "Agreement") is made and entered into this ＿22＿ day of September, 2014, by and between Elizabeth Chiapperino, Maureen DeMatteo, Warren Fleming, Laurie Gadzik, Karen Lawlor, Maureen Leone, Kathleen Niland, Keith Parmalee, Yvonne Robinson, and Jeannine Simard ("Plaintiffs") and Yale University, and DVA Renal HealthCare, Inc. operating as a subsidiary of DaVita HealthCare Partners, Inc. and doing business as DaVita New Haven Dialysis Clinic ("Defendants"). Plaintiffs and Defendants shall be referred to collectively as "the Parties" in this Agreement.

A.     WHEREAS, the Plaintiffs intend to file suit against the Defendants in connection with employment related claims involving, *inter alia*, violations of Title VII of the Civil Rights Act, sexual harassment/gender discrimination under Connecticut law, retaliation, wrongful discharge, and other torts, both negligent and intentional, in the United States District Court for the District of Connecticut;

B.     WHEREAS, the Plaintiffs have individually exhausted their administrative remedies with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and received a Release of Jurisdiction dated June 26, 2014 affording them a 90 day time limit to file an action in State Court or be barred;

C.     WHEREAS, the Plaintiffs have individually exhausted their administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and received Notice of Right to Sue Letters dated July 23, 2014 affording them a 90 day time limit to file an action in state or federal court under Title VII or be barred; and

D.      WHEREAS, the Parties believe that it is mutually desirable to refrain from the filing of any such suits until the completion of mediation and settlement discussions between the Parties;

NOW, THEREFORE, in consideration of the mutual covenants of the Parties as stated herein, the Parties hereby agree as follows:

1.      The running of time under any statute of limitations, statute of repose or any other time-based limitation or defense, whether at law, in equity, under statute, contract or otherwise, including but not limited to C.G.S. §46a-100 and Title VII of the Civil Rights Act mandating that Plaintiffs file their Complaints within 90 days of receiving the Release of Jurisdiction from CHRO and/or the Notice of Right to Sue from EECO that might be asserted as a time bar and/or limitation to any claim in any state or federal court having jurisdiction over the parties, is tolled and suspended as of September 1, 2014 (the "Effective Date"), and shall remain tolled and suspended through December 31, 2014.

2.      Nothing in this Agreement shall affect any defense available to any party as of the Effective Date of this Agreement.  Nothing in this Agreement, or in the circumstances which gave rise to this Agreement, shall be construed as an acknowledgement by any party that any claim has or has not been barred or is about to be barred by the statute of limitations, laches, or other defense based on the lapse of time as of the Effective Date of this Agreement.

3.      This Agreement shall not operate as an admission of liability by any party, and nothing in this Agreement shall prejudice or affect any other rights or liabilities of

the Parties. Neither this Agreement nor any action taken pursuant to this Agreement shall be offered or received as evidence in any action or proceeding as an admission of liability or wrongdoing by any party.

4.     This Agreement shall be kept confidential and shall not be admitted into evidence in any action or proceeding for any purpose other than to establish or enforce its terms, or to respond to the assertion of a statute of limitations, statute of repose or laches defense or any other time-based limitation or defense, whether at law, in equity, under statute, contract or otherwise in response to the assertion of a claim.

5.     This Agreement shall be binding on the Parties' respective predecessors, successors and assigns.

6.     This Agreement comprises the entire agreement of the Parties with respect to tolling of the statute of limitations, statute of repose, laches defense or any other time-based limitation or defense, whether at law, in equity, under statute, contract or otherwise based on the lapse of time. This Agreement may be modified, amended or supplemented only by a written instrument signed by the Parties. This Agreement shall be interpreted in accordance with the laws of the State of Connecticut.

7.     The persons signing this document represent that they have the authority to bind the Parties represented and recognize that the other Parties to this agreement are relying on such representation.

8.     The Parties hereby agree to accept as binding separately executed copies of this Agreement containing one or more signatures provided all of the Parties have

3

signed a copy of the Agreement.  Signed copies of this Agreement shall have the same

binding effect as the originals.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the

Effective Date written above.

PLAINTIFFS Elizabeth Chiapperino, Maureen DeMatteo,
Warren Fleming, Karen Lawlor, Maureen Leone,
Kathleen Niland, Keith Parmalee, Yvonne Robinson and Jeannine Simard,

By _____
    Jennifer L. Zito, Esq.

PLAINTIFF Laurie Gadzik,

By _____
    Arthur C. Laske, Esq.


DEFENDANT Yale University,

By _____
    Patrick Noonan, Esq.


DEFENDANT DVA Renal HealthCare Inc. d/b/a DaVita
New Haven Dialysis Clinic,

By_____
    Elizabeth Acee, Esq.

signed a copy of the Agreement.  Signed copies of this Agreement shall have the same

binding effect as the originals.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the

Effective Date written above.

PLAINTIFFS Elizabeth Chiapperino, Maureen DeMatteo,
Warren Fleming, Karen Lawlor, Maureen Leone,
Kathleen Niland, Keith Parmalee, Yvonne Robinson and Jeannine Simard,

By _____
      Jennifer L. Zito, Esq.

PLAINTIFF Laurie Gadzik,

By _____
      Arthur C. Laske, Esq.


DEFENDANT Yale University,

By _____
      Patrick Noonan, Esq.


DEFENDANT DVA Renal HealthCare Inc. d/b/a DaVita
New Haven Dialysis Clinic,

By_____
      Elizabeth Acee, Esq.

4

signed a copy of the Agreement.  Signed copies of this Agreement shall have the same

binding effect as the originals.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the

Effective Date written above.

PLAINTIFFS Elizabeth Chiapperino, Maureen DeMatteo,
Warren Fleming, Karen Lawlor, Maureen Leone,
Kathleen Niland, Keith Parmalee, Yvonne Robinson and Jeannine Simard,

By _____
    Jennifer L. Zito, Esq.

PLAINTIFF Laurie Gadzik,

By _____
    Arthur C. Laske, Esq.


DEFENDANT Yale University,

By _____
    Patrick Noonan, Esq.


DEFENDANT DVA Renal HealthCare Inc. d/b/a DaVita
New Haven Dialysis Clinic,

By _____
    Elizabeth Acee, Esq.

4

## AMENDED STATUTE OF LIMITATIONS TOLLING AGREEMENT

This Amended Statute of Limitations Tolling Agreement ("Amended Agreement") is made and entered into this 19th day of December, 2014, by and between Elizabeth Chiapperino, Maureen DeMatteo, Warren Fleming, Laurie Gadzik, Karen Lawlor, Maureen Leone, Kathleen Niland, Keith Parmalee, Yvonne Robinson, and Jeannine Simard ("Plaintiffs") and Yale University, and DVA Renal HealthCare, Inc. operating as a subsidiary of DaVita HealthCare Partners, Inc. and doing business as DaVita New Haven Dialysis Clinic ("Defendants").  Plaintiffs and Defendants shall be referred to collectively as "the Parties" in this Amended Agreement.

A.      WHEREAS, the Parties previously entered in a Statute of Limitations Tolling Agreement effective September 1, 2014 through December 31, 2014 ("Original Tolling Agreement"), a copy of which Original Tolling Agreement is attached hereto and made a part hereof;

B.      WHEREAS, the Parties have been engaged in pre-suit mediation with Magistrate Judge William Garfinkel in an attempt to potentially settle and resolve Plaintiffs' claims before suit is filed; and

C.      WHEREAS, the Parties believe that it is mutually desirable to refrain from the filing of any such suits until the completion of mediation and settlement discussions between the Parties beyond the tolling date of December 31, 2014;

NOW, THEREFORE, in consideration of the mutual covenants of the Parties as stated herein and stated in the Original Tolling Agreement, the Parties hereby agree as follows:

1.  To extend their Original Tolling Agreement beyond December 31, 2014 to allow the running of time under any statute of limitations, statute of repose or any other time-based limitation or defense, whether at law, in equity, under statute, contract or otherwise, including but not limited to C.G.S. §46a-100 and Title VII of the Civil Rights Act mandating that Plaintiffs file their Complaints within 90 days of receiving the Release of Jurisdiction from CHRO and/or the Notice of Right to Sue from EECO that might be asserted as a time bar and/or limitation to any claim in any state or federal court having jurisdiction over the parties, to be tolled and suspended through January 31, 2015; and

2.  That all other provisions of the Original Tolling Agreement remain in full force and effect.

Signed copies of this Amended Agreement shall have the same binding effect as the originals.

IN WITNESS WHEREOF, the Parties have executed this Amended Agreement as Of the Effective Date of December 19, 2014.

PLAINTIFFS Elizabeth Chiapperino, Maureen DeMatteo,
Warren Fleming, Karen Lawlor, Maureen Leone,
Kathleen Niland, Keith Parmalee, Yvonne Robinson and Jeannine Simard,

By _____
Jennifer L. Zito, Esq.

2

PLAINTIFF Laurie Gadzik,

By _____
    Arthur C. Laske, Esq.


DEFENDANT Yale University,

By _____
    Patrick Noonan, Esq.


DEFENDANT DVA Renal HealthCare Inc. d/b/a DaVita
New Haven Dialysis Clinic,

By_____
    Elizabeth Acee, Esq.

PLAINTIFF Laurie Gadzik,


By _____
    Arthur C. Laske, Esq.



DEFENDANT Yale University,

By _____
    Patrick Noonan, Esq.


DEFENDANT DVA Renal HealthCare Inc. d/b/a DaVita
New Haven Dialysis Clinic,

By_____
    Elizabeth Acee, Esq.

3

PLAINTIFF Laurie Gadzik,


By _____
    Arthur C. Laske, Esq.



DEFENDANT Yale University,

By _____
    Patrick Noonan, Esq.



DEFENDANT DVA Renal HealthCare Inc. d/b/a DaVita
New Haven Dialysis Clinic,

By _Elizabeth K. Acee_ —myc
    Elizabeth Acee, Esq.

3

## SECOND AMENDED STATUTE OF LIMITATIONS TOLLING AGREEMENT

This Second Amended Statute of Limitations Tolling Agreement ("Second Amended Agreement") is made and entered into this 26th day of January, 2015, by and between Elizabeth Chiapperino, Maureen DeMatteo, Warren Fleming, Laurie Gadzik, Karen Lawlor, Maureen Leone, Kathleen Niland, Keith Parmalee, Yvonne Robinson, and Jeannine Simard ("Plaintiffs") and Yale University, and DVA Renal HealthCare, Inc. operating as a subsidiary of DaVita HealthCare Partners, Inc. and doing business as DaVita New Haven Dialysis Clinic ("Defendants").   Plaintiffs and Defendants shall be referred to collectively as "the Parties" in this Second Amended Agreement.

A.  WHEREAS, the Parties previously entered in a Statute of Limitations Tolling Agreement effective September 1, 2014 tolling applicable statutes of limitations through December 31, 2014 , a copy of which Tolling Agreement is attached hereto and made a part hereof; and

B.  WHEREAS, the Parties previously entered into an Amended Statute of Limitations Tolling Agreement effective December 19, 2014 tolling applicable statutes of limitations through January 31, 2015, a copy of which Amended Tolling Agreement is attached hereto and made a part hereof; and

C.  WHEREAS, the Parties have been engaged in pre-suit mediation with Magistrate Judge William Garfinkel in an attempt to potentially settle and resolve Plaintiffs' claims before suit is filed; and

D.  WHEREAS, the Parties believe that it is mutually desirable to refrain from the filing of any such suits until the completion of mediation and settlement discussions between the Parties beyond the amended tolling date of January 31, 2015;

NOW, THEREFORE, in consideration of the mutual covenants of the Parties as stated herein and stated in the original Tolling Agreement as amended December 19, 2014, the Parties hereby agree as follows:

1.  To extend their Tolling Agreement beyond January 31, 2015 to allow the running of time under any statute of limitations, statute of repose or any other time-based limitation or defense, whether at law, in equity, under statute, contract or otherwise, including but not limited to C.G.S. §46a-100 and Title VII of the Civil Rights Act mandating that Plaintiffs file their Complaints within 90 days of receiving the Release of Jurisdiction from CHRO and/or the Notice of Right to Sue from EECO that might be asserted as a time bar and/or limitation to any claim in any state or federal court having jurisdiction over the parties, to be tolled and suspended through **February 13, 2015;** and

2.  That should the controversy and claims between the parties be mutually resolved by way of Settlement Agreement by and between the parties before **February 9, 2015,** that the Tolling Agreement as amended December 19, 2014 and again herein shall be extended one final time beyond February 13, 2015 up through and including February 28, 2015 for the sole purpose of finalizing and executing any and all settlement documentation agreed to by the parties.

2

3.  That all other provisions of the original Tolling Agreement as amended

December 19, 2014 remain in full force and effect.

Individually signed copies of this Second Amended Tolling Agreement shall have

the same binding effect as a fully executed originals and shall be effective as of January

26, 2015.

IN WITNESS WHEREOF, the Parties have executed this Amended Agreement as

Of the Effective Date of January 26, 2015.

PLAINTIFFS Elizabeth Chiapperino, Maureen DeMatteo,
Warren Fleming, Karen Lawlor, Maureen Leone,
Kathleen Niland, Keith Parmalee, Yvonne Robinson and Jeannine Simard,

By _____
    Jennifer L. Zito, Esq.

PLAINTIFF Laurie Gadzik,

By _____
    Arthur C. Laske, Esq.

DEFENDANT Yale University,

By _____
    Patrick Noonan, Esq.

DEFENDANT DVA Renal HealthCare Inc. d/b/a DaVita

3

3.  That all other provisions of the original Tolling Agreement as amended December 19, 2014 remain in full force and effect.

Individually signed copies of this Second Amended Tolling Agreement shall have the same binding effect as a fully executed originals and shall be effective as of January 26, 2015.

IN WITNESS WHEREOF, the Parties have executed this Amended Agreement as Of the Effective Date of January 26, 2015.

PLAINTIFFS Elizabeth Chiapperino, Maureen DeMatteo,
Warren Fleming, Karen Lawlor, Maureen Leone,
Kathleen Niland, Keith Parmalee, Yvonne Robinson and Jeannine Simard,


By _____
      Jennifer L. Zito, Esq.


PLAINTIFF Laurie Gadzik,


By _____
      Arthur C. Laske, Esq.


DEFENDANT Yale University,

By _____
      Patrick Noonan, Esq.


DEFENDANT DVA Renal HealthCare Inc. d/b/a DaVita

3

New Haven Dialysis Clinic,

By

Elizabeth Acee, Esq.